## Reighard's Estate.

*Wills—Trust—Widow's election to take against will—Effect on other bequests—Accumulations.*

1. A testator dying without issue, bequeathed his estate in trust for ten years or until the death of his widow, with directions to pay her a proportion of the income during her life, and during the continuance of the trust to pay certain fixed annuities to named persons, and provided that in the event of the refusal of the wife to accept the provisions of the will, the bequests in favor of two of the annuitants should be void; at the expiration of the trust estate the property was to be divided among seventeen remaindermen. The widow elected to take against the will. The Orphans' Court decided that the widow's election rendered inoperative the provisions of the will only in so far as they affected her and the two annuitants, and awarded the balance remaining after deducting the widow's share to the trustees so that the provisions not affecting the widow could be carried into effect. *Held,* no error.

2. Where in such case there were no directions for any accumulation of income and it appeared that after paying the annuities there was excess income in the hands of the trustees, the Orphans' Court properly decided that there was no effort to create an invalid trust for an accumulation and that the excess income should be awarded to the residuary legatees.

Argued Oct. 25, 1915.    Appeal, No. 6, Oct. T., 1916, by Martha Pressel, from decree of O. C. Allegheny Co., June T., 1915, No. 72, dismissing exceptions to adjudication, in Estate of David P. Reighard, Deceased.    Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.    Affirmed.

Exceptions to adjudication.

The adjudication of MILLER, J., was in part as follows:

The main questions to be considered are, (a) whether there be such a transgressive direction to accumulate income in violation of the Act of April 18, 1853, P. L. 503, thus terminating the trust; and (b) whether the widow's election to take against the will, terminates the trust created and accelerates the period of distribution.

David P. Reighard, died testate, December 9, 1913.

After directing in the first paragraph of his will that his debts, funeral and expenses incident to the settlement of his estate should be paid, and devising to his wife in fee simple the homestead situate at the corner of Highland and Stanton avenues, in the City of Pittsburgh, together with all the furnishments, pictures, household ornaments, plate, provisions, etc., therein, he proceeds by the third paragraph of his will, as follows:

"Third: I do give, devise and bequeath all of the balance and remainder of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate, to my executors hereinafter named, and their successors, for a period of ten years from the date of my death, or during the natural life of my wife Belle Reighard, should she survive me for a period of over ten years, in trust, to manage and control the same and to pay out the net income arising therefrom in manner following, to wit:

"(A) To pay to my wife, Belle Reighard, in monthly installments, in as near equal amounts as possible, one-half of said net income for and during her natural life should she so long remain my widow, and in case of her remarriage, then and from thenceforth to pay her, in monthly installments, one-fourth of said net income for and during the balance of her natural life. The above provisions for my wife to be accepted by her in lieu of all right or expectancy of dower in any portion of my estate.

"(B) To pay monthly for a period of ten years after my death or during the natural life of my wife, should she survive me for a period of over ten years, to my sisters, Rebecca Filler, now wife of A. J. Filler; Martha Pressel, widow of Albert Pressel; Mary Jane Kelly, now wife of John Kelly, and to my brothers Alexander, Samuel S., and to my nephew Ralph R. Nowlen, each the sum of fifty dollars; also to pay to my brother H. M. Reighard, the sum of fifty dollars monthly during the period aforesaid, so long as he apply the same to the

maintenance of his family, of which my executors shall
be the sole judges, and upon his failure so to do, then to
pay the same to his now wife, and in the event of her
death to his children then living, in equal shares.   Also
to pay monthly during said period to my brother John
Reighard, the sum of twenty-five dollars and to the chil-
dren of my deceased sister (late wife of John Roberts)
the sum of fifty dollars per month, to be divided among
them equally; also to pay to Louis Lytle and Harry
Reifsnyder monthly during the said period each the sum
of fifty dollars, or in the event of the decease of either or
both of them, then to their children, as the case may be,
.to be divided among them equally during the period
aforesaid, upon the express condition, however, that my
wife accepts the provisions made in this will for her, in
lieu of dower, and in the event of her refusal to accept
said provision, then and in that event the bequests to
said Louis Lytle and Harry Reifsnyder, and their chil-
dren hereinabove contained shall be void."

He then nominated and appointed three executors and
trustees under his will.

"And give them full power to purchase and sell real or
personal property at public or private sale and to convey
the same to the purchasers thereof by good and sufficient
deed or deeds of conveyance, as fully and completely as
I myself could do if living, and to invest and reinvest
the proceeds thereof in such securities as they may deem
for the best interests of my estate, whether said invest-
ments are as authorized by the laws of Pennsylvania
and approved by the courts thereof, or otherwise."

By the fifth paragraph of his will he directs:

"At the expiration of the trust period aforesaid the
balance of my estate shall be divided into seventeen
shares as rapidly as the same may conveniently be done
and distributed by my executors among my brothers, sis-
ters and nephews in the following proportions: to my
brothers Alexander, Samuel S. and H. M. Reighard, and
to my sisters Rebecca Filler, Martha Pressel and Mary

Jane Kelley, and to my nephew Ralph R. Nowlen, two shares each; to the children of my deceased sister, late wife of John Roberts, two shares, to be divided among them equally; and to my brother John Reighard one share. The share or shares of one or more mentioned in this paragraph dying prior to the period of distribution to vest in the issue of the one or more so dying."

The widow elected to take against the will; there are no children of the decedent and of his wife. In addition to Ralph R. Nowlen, named in the will as a nephew, the son of Eliza Reighard Nolan, she had two other sons, nephews of the testator, to wit: Amasa J. Nowlen and H. Ross Nowlen.

The net income of the estate, after deducting the widow's one-half, is about $40,000 per year. Of this amount the income specifically devised is about $5,100.00 per year.

It cannot be said that testator directed an accumulation of the income of his estate; he directed the contrary; in the third paragraph he authorizes his trustees to whom he bequeaths his estate in trust, not only to manage and control the estate, but "to pay out the net income arising therefrom."

True, by the direction to pay one-half to the widow and to pay certain monthly annuities to brothers, sisters and a nephew, the record shows that the whole of the net income is not and will not likely be exhausted. There is a residue of income, but not necessarily such an accumulation as to bring it within the ban of the Act of 1853. Even though there be an accumulation, it does not follow that the trust must fall by reason thereof; neither directly nor implied is there a trust for accumulations created by the provisions of the will, for the language is that the net income shall be paid out, and this means all the income.

Conceding that the will created a trust for accumulations; they would be void only so far as they exceed the terms of the Act of 1853. The general gift, in this case

the creation of a trust estate, is not void because it might appear that accumulations of income transgress the restrictions of the act; only so much as does transgress is void: Leisenring's Estate, 237 Pa. 60; a provision for accumulation contrary to the statute is void only for the excess: Hillyard v. Miller, 10 Pa. 326; Rhodes' Est., Oldmixon's App., 147 Pa. 227. A gift infringing the rule against perpetuities, which is absolutely void, must not be confused with the statute prohibiting trusts for accumulations, which trusts are good to the extent that they do not transgress the statute: Lennig's Est., Fullerton's App., 154 Pa. 211; Brown, et al., v. Williamson's Executors, 36 Pa. 338.

The excess income "shall go to and be received by such person or persons as would have been entitled thereto if such accumulations had not been directed"; Sec. 9, Act of April 18, 1853, P. L. 507. The testator has spoken, designating the persons who are entitled to this excess income; he gave his entire estate to certain brothers, sisters and a nephew. The persons entitled must be found under the provisions of the will as fairly interpreted, if such can be found: Martin's Est. & App., 185 Pa. 51, before intestacy can be presumed. The estate in the remaindermen, or residuary legatees, subject to the income payable during the life of the wife, was vested; the persons definitely ascertained. Where there is no vesting, or there are no persons designated, or they cannot now be known, as in Rhodes' Est., Oldmixon's App., 147 Pa. 227; or where the accumulation is to create a fund from which legacies are payable, and there is no present residuary gift, as in Grim's App., 109 Pa. 391, the excess would pass to the next of kin under the intestate law.

The law does not presume intestacy; the presumption is the other way, where a will disposes of the entire estate; this testator intended to die testate as to all of his estate because he so says. As the parties entitled to the estate are exactly the same as those entitled to the an-

nuities, and in the same proportion, and as he intended them to have the full benefit of his estate, it must be obvious that the excess income which must be distributed, should be awarded to the annuitants, who are the remaindermen, in the proportions designated by the testator himself.

While the election of the widow to take against the will is equivalent to her death: Ferguson's Est., 138 Pa. 208; Vance's Est., 141 Pa. 201, as to her the trust is ended, and if there be no trust for others, the payment of the whole estate is accelerated; such is not the law where provisions for others continue the trust. This trust was created, inter alia, to provide during the continuance of the period for the payment of certain annuities to testator's brothers, sisters and a nephew. Testator had in mind the possibility of his wife's election to take against his will, because he provided that her refusal should forfeit the benefit to two annuitants. But he still had in mind, notwithstanding her rejection of the provisions of his will, the maintenance of the trust for the other purposes set forth. He desired to postpone his bounty to his ultimate beneficiaries for reasons which seemed good to him.

His trustees for ten years, or during his wife's life, if she lived beyond that period, are to manage and control the trust property; to pay out the net income in a designated manner; to have full power to purchase and sell personal and real property; to invest and reinvest the proceeds in such securities as they may deem best; to determine whether the annuity paid to the brother, Henry, should be given to his wife and children in case he did not provide for them; and finally, at the expiration of the trust period, to divide the estate into seventeen parts and distribute it.

This time for distribution has not yet arrived, even though the widow has elected to take against the will; testator directed the distribution of the corpus of his estate to be postponed during the trust period; he di-

rected his executors to manage and control the whole of
his estate to that time; he gave them special discretion-
ary powers as to the payment of the annuity, or income
to his brother, H. M. Reighard.  It is conceded by the
beneficiaries who claim present distribution that a sum
might have to be impounded to enable the trustees to
perform this duty at least; if so much is conceded, and
so much of the trust is to remain, and this is an arbitrary
exercise of power, on what authority shall not the re-
mainder of the trust be sustained?  If the trust is valid
and continuing for any portion of the estate not frus-
trated by the widow's election, it must be held to be valid
as to the whole, where, as it appears here, testator's clear
and valid desire was that his beneficiaries should pres-
ently receive income only.  It cannot be said that tes-
tator's sole purpose in creating the trust, was for the
benefit of his wife.  If that had been his entire purpose,
then he could have produced the same result by giving
his wife the entire income of half of his estate and by
giving to the other beneficiaries the other half absolutely
now.

In support of this construction that the widow's elec-
tion has not terminated the trust Portuondo's Est.,
Dugro's App., 185 Pa. 472, is authority.  There, as here,
the widow was awarded the major portion of the income
for life, to another, the mother there, and to the brothers
and sisters here, the rest of the income; there the mother
to take one-third of the balance upon the death of the
wife, here to brothers and sisters to take the entire bal-
ance in designated portions.  It was there held that the
widow's election did not terminate the trust as to the
other parties, nor accelerate the time for payment, the
court saying: "This is not a trust for the widow alone.
There is another person interested, and as long as the
purpose of the testator with reference to her can be per-
formed, it must be done.  The scheme of the will is not to
be departed from except when necessity requires, and
there is no such necessity in this case, because even after

the widow's one-half has been taken from the residuary estate, enough can be set apart to secure to the mother the income which the testator intended she should have during his wife's lifetime." So, similar in principle, is Gourley's Est., 238 Pa. 62.

Testator devises the balance and remainder of his estate for a period of ten years, or during the life of his wife, should she survive him for a period of over ten years, to his executors in trust. It is clear that he intended the trust to continue for at least ten years, even though his wife died prior to that time, for he said, should she live beyond that period that then the trust should continue until her death. He does not say should she die before that period that the trust terminates with her death. If her death prior to that time was not to terminate the trust, her election prior to that time cannot terminate the trust as to the other trust beneficiaries under the will.

For their benefit also the trust was created; the trustees vested with active duties; they are to continue to manage and control the trust estate, which includes caring for, selling and buying real estate, and investing personalty, and paying income.

Here, as in Spring's Est., 216 Pa. 529, they were to collect and pay out income, exercising their discretion in Spring's estate as to the children, here, as to the brother, H. M. Reighard; here, as there, the ultimate or residuary estate is vested in the same persons who are to receive the income. Under exactly similar provisions the trust was sustained there, the court saying, inter alia, "It is a primary rule of our cases to give effect to the intention of the testator, and the presumption always is that the intent was lawful. Applying this principle to the present case, there is presented an active trust, created by apt words, and a testamentary intent clearly expressed which must be sustained, unless it can be shown that the trust there created is in violation of an inflexible rule of law, or of statutory restrictions."

To sustain this trust accords with testator's direct intentions. What he directed was lawful; he had a right to say what should be done with his own property, and how it should be distributed. The widow's election, changing disposition of a part, should not result in defeating his intention and express commands as to the residue. The law imposes no restrictions on the trusts created as to the part not taken by the widow. Such trusts may be created for every purpose not unlawful: 3 Pomeroy's Eq. Jur., Sec. 991.

From the foregoing discussions the conclusions are, first, that of the income on hand there must be awarded first the amounts payable to the annuitants, and that any excess of income must be paid to the same parties, the remaindermen in the proportions therein designated; and, second, that the remaining corpus of the estate must be awarded to the trustees for the purposes set forth in the will.

The court dismissed the exceptions. Martha Pressel appealed.

*Errors assigned* were in dismissing the exceptions.

*R. A. Henderson*, with him *W. E. Mackey*, for appellant.—The primary purposes of the trust are ended: Woodburn's Est., 151 Pa. 586.

The ten-year period does not control if the primary purposes have failed: Packer's Est. (No. 1), 246 Pa. 97; Lee's Est., 207 Pa. 218; Rea v. Girard Life Ins. Annuity & Trust Co., 17 Philadelphia 357; Snyder's Est., 17 Pa. D. R. 270; Yarnall's App., 70 Pa. 335; Sharpless' Est., 151 Pa. 214; Brooke's Est., 214 Pa. 46; McMullin v. McMullin, 8 Watts 236; Fitspatrick's App., Wilson's Est., 49 Pa. 241; Koenig's App., 57 Pa. 352; Ogden's Appeal, 70 Pa. 501; Ritter's Est. & App., 190 Pa. 102; Conley's Est., 197 Pa. 291.

*Thomas Patterson*, of *Patterson, Crawford, Miller &*

*Arensberg,* with him *W. A. Griffiths,* for appellees.—The will does not provide either directly or indirectly for any accumulations.

Even if the will should be held to provide indirectly for unlawful accumlations, the will and the trust created therein, would only be void as to the illegal accumulations and would otherwise be carried out in accordance with the intention of the testator: Leisenring's Est., 237 Pa. 60; Sharp's Est., Myers' App., 155 Pa. 289; Brown, et al., v. Williamson's Executors, 36 Pa. 338; Lennig's Est., Fullerton's App., 154 Pa. 211; Mitcheson's Est., 11 W. N. C., 547; Martin's Est., 185 Pa. 51; Grim's App., 109 Pa. 391; Wright's Est., 227 Pa. 69; Howell's Est., 180 Pa. 515.

The election of Mrs. Reighard to take against the will does not destroy the trust created therein, but the provisions of the said trust should be carried out for and during the term of Mrs. Reighard's natural life: Gourley's Est., 238 Pa. 62; King's Est., 210 Pa. 435.

OPINION BY MR. CHIEF JUSTICE BROWN, March 20, 1916:

After devising to his wife in fee simple his homestead, together with its contents, the testator, in clearest terms, directed that all the rest of his estate should constitute an active trust in the hands of his executors, to continue for a period of ten years from his death or during the natural life of his wife, if she should survive him for a period of over ten years. If she had elected to accept the provisions of his will, she and the other cestuis que trustent would have received monthly during her life what the will gave them, but she elected to take against it, and, her husband having died childless, she acquired a life estate in one-half of his realty and one-half of his personalty absolutely.

The single question raised by the assignments of error is whether the trust should be declared terminated and the corpus of the personal estate, together with the ac-

crued income, as shown by the account of the executor, distributed among the residuary legatees named in the will. The plain and simple scheme of the testator has become inoperative by his wife's election to take against his will, so far as its provisions affect her, but no farther. He clearly contemplated the contingency of her election not to accept his testamentary provision for her, for, in directing that $50.00 should be paid monthly during the continuance of the trust to each of two relatives of his wife, he declared that these annuities were to be paid "upon the express condition, however, that my wife accepts the provisions made in this will for her, in lieu of dower, and in the event of her refusal to so accept said provisions, then and in that event the bequests to said Louis Lytle and Harry Reifsnyder, and their children, hereinabove contained shall be void." No other provision in the will was to be disturbed by his wife's election to take against it, and the unavoidable conclusion is that the testator's intention was that all the provisions in the will, except those relating to his wife and her two relatives, should continue unaffected by her election to take against it. Expressio unius, exclusio alterius. By her election to take against the will the widow of the testator destroyed the trust created for her. But how could that election strike down the trust for others created in terms as clear as those which had created the trust for her? The trust created by the testator was not for her alone, but for others, to continue for them during her natural life; and the intention of her husband is not to be thwarted by her refusal to accept the provisions of his will, but is to be given effect under the cardinal rule applicable to every will: Portuondo's Est., 185 Pa. 472; Gourley's Est., 238 Pa. 62. Notwithstanding what the widow has done, the clearly expressed intention of her husband must be given effect. During a period fixed by him his beneficiaries, of whom the appellant is one, are not to have any shares in the corpus of one-half of his estate, for his express direction is that it shall be held in

trust for them as long as his widow shall live. His reason for so directing is immaterial, if he created, as he clearly did, an active trust for the appellant and the other residuary legatees: Spring's Est., 216 Pa. 529.

No direction is to be found in the will of the testator for any accumulation of the income of his estate. Any excess income in the hands of the trustees will, under the decree of the court below, be paid to the persons named by the testator as his residuary legatees, one of whom is the appellant, and she is not complaining of this, if the trust is to continue. The convincing opinion of the learned adjudicating judge relieves us from further discussion of the question before us, and the decree may be regarded as affirmed on that opinion at appellant's costs.