## Lucas's Estate,

*Wills—Construction—Intestacy—Election by widow to take against will.*
The testator directed that "all stocks or real estate and all moneys in banks" should be "turned over" to his executor, and that in case of any sales, he should reinvest the proceeds, "holding the estate intact," and after paying the widow an allowance of $50 a month until the estate was increased sufficiently to allow a larger sum, he should divide the "balance" of income between his (testator's) brother and sister. The widow elected to take against the will: *Held.* 1. That under the Act of June 7, 1917, § 2 (*a*), P. L. 431, as amended by the Act of July 11, 1917, P. L. 755, she was not entitled to the $5000 allowance, as said act does not apply where the surviving spouse elects to take against the will, except in cases of actual or partial intestacy, and then it applies only as to that part of the estate as to which there is an intestacy; and even if there were an intestacy as claimed, it was only as to the remainder after valid life estates, and under the claimant's theory the allowance could not be made until that time. 2. The testator having died without issue, the widow, having elected to take against the will, was entitled to one-half of the estate.

Exceptions to adjudication.  O. C. Phila. Co., April T., 1922, No. 678.

*Horace M. Rumsey,* for exceptant; *John R. Umsted,* contra.

THOMPSON, J., March 2, 1923.—The testator died without issue, leaving surviving his wife, Harriet E. Lucas, his brother and sister, Harry C. Lucas and Emma E. Barnes, and children of deceased sisters, and leaving a will with codicil as follows:

"I, Silas T. Lucas, of the City of Philadelphia, Pennsylvania, being in good sound mental condition, do hereby make this my last Will and Testament, and do hereby appoint my brother Harry C. Lucas as my sole Executor, and it is my wish that he be allowed to serve as Executor without any bond. I desire

that all stocks or real estate and all monies in banks be turned over to him, and in case of any sales that he reinvest the same holding the estate intact and all interest or profits in the same to be divided by said Executor among those entitled to the same. I desire that my Executor pay to my wife from the profits or income of my estate a sum of money sufficient for her support, but not to exceed fifty dollars per month, until the estate has increased sufficient to allow the Executor to give her a larger amount. That matter to be discretionary with my Executor. During the life of my sister Emma E. Barnes and my brother Harry C. Lucas I do not wish my estate divided, and after the payment to my wife I desire that the balance, if needed by them for their support, meaning my brother and sister, the same shall be paid by my Executor. Power is given to my Executor to substitute or appoint another to act in his place.

"Signed January 2nd, 1912. SILAS T. LUCAS."

Witnesses to Signature, A. C. Segrest, Frank A. Loney.

"To my brother

Harry C. Lucas c/o Phila. Electric Co. Phila. Pa.

"In case of my death I want you to go to the firm of Frank Bell & Co. So. Penn Square Phila. Pa. and take full charge of the accounts I have opened there and continue or close the same as you deem best. In case you close the same, pay to my sister Emma E. Barnes the money belonging to her and from the balance, the payments due yourself. The residue or remainder I want you to invest and from the interest or dividends accruing from such investment pay to my wife according to the will I left with you. You will find also among my effects a deed from my wife for properties in Chicago, which after foreclosure I had her take title, she is perfectly willing that the same should be made part of my estate. Proceed as under my will, but hold the estate together and I want it continued so. Your brother,

"Philadelphia Pa. October 30th, 1913. SILAS T. LUCAS."

The widow elected to take against the will, and, claiming that the testator died actually intestate as to the remainder of his estate upon the termination of the life interests, petitioned the court for the appointment of appraisers for allowance of $5000 provided by the Intestate Act of 1917 for widows of intestates dying without issue. To this an answer was filed, and by order dated Oct. 31, 1922, the court referred said petition and answer to the judge auditing the account of the executor. The auditing judge in his adjudication held that the widow was not entitled to have included in the award to her the sum of $5000 allowed by section 2 (a) of the Intestate Act of 1917, as amended by Act of July 11, 1917, P. L. 755, for the reason that "to award the widow the $5000 would be in direct violation of the act of assembly, which provides that the allowance shall not apply to cases where the surviving spouse shall elect to take against the will of the deceased spouse (see Mitchell's Estate, 79 Pa. Superior Ct. 208); the claim of Harriett E. Lucas to receive the allowance of $5000 is refused."

We agree with the auditing judge that, by electing to take against the will, the widow brings herself in direct conflict with that portion of the Intestate Act of 1917, as amended, which provides that the allowance of $5000 shall not apply to cases "where the surviving spouse shall elect to take against the will of the deceased spouse." Where a partial intestacy arises for any reason, the surviving spouse who takes under the will is entitled to share also in that part of the estate as to which the testator died actually intestate (Thompson's Estate, 229 Pa. 542; Schillo's Estate, 64 Pa. Superior Ct. 85), and, accord-

ingly, where there is no issue, entitled to said allowance: McNulty's Estate, 29 Dist. R. 709.

The allowance, however, can be had only as and when the intestacy arises and the intestate estate is ripe for distribution. It is contended on behalf of the widow that distribution should now be had, because there is no disposition here of the *corpus* in remainder, and, hence, the intestacy as to it arose at testator's death, notwithstanding that the *corpus* is given to the trustee pending the life estates. A widow's election has the same effect as her death, and interests in remainder are accelerated; but interests, if any, to take effect upon the death of the widow and before final distribution are not defeated: Portuondo's Estate, 185 Pa. 472; Gourley's Estate, 238 Pa. 62; Reighard's Estate, 253 Pa. 43. Until that time, the provisions of the will, except as to the widow, are in full force; and it is only then, if at all, that the intestacy arises. If, therefore, the argument that the election of the widow is only against what is disposed of by the will is valid, so that, as to what is not disposed of thereby, she may also take her interests in the actually intestate estate, which does not arise until after the termination of the life estates, the claim is premature and must remain in abeyance until intestacy has actually arisen. On the other hand, if the remainder in *corpus* is, under the peculiar language of this will, actually disposed of, so that the widow, in taking against the will, takes now whatever interest is given her in the whole estate by the Intestate Act, she clearly is entitled only to one-half of the estate, because the proviso to the act denies her the allowance of $5000. In either case, the present award to the widow of only one-half of the estate must be sustained.

Shestack's Estate, 267 Pa. 115, is not in point, because in that case the testatrix married after the date of the will, and in such case the Wills Act of 1917 provides that the surviving spouse shall be entitled as if such person had actually died without any will, and the court held that, by the marriage of the testatrix, her will, as to her husband, was annulled, and there was an actual intestacy as to him.

The testimony shows that the testator, who is not a lawyer, drew his own will, and that he did not intend to die intestate as to any part of his estate is shown not only from the fact that he made a will, but that he specifically enumerated what should pass thereunder, to wit, "all stocks or real estate, and all moneys in bank," which the testimony and the inventory indicate was his entire estate. The will provides: "I desire that all stocks or real estate and all monies in banks be turned over to him, and in case of any sales that he reinvest the same holding the estate intact, and all interest or profits in the same to be divided by said Executor among those entitled to the same."

Testator then goes on to say that he desires his estate to be kept intact during the life of his sister and brother, and the income paid to his wife, sister and brother as set forth in the will. We thus see that testator intended to divide his estate among those entitled to the same, which means his heirs and next of kin, subject, however, to the same being kept intact and the income paid to his wife, sister and brother for their support and maintenance. There is, therefore, no intestacy in the will at all, and the construction which we place upon the same, as above indicated, does violence to no provisions contained therein and carries into effect the plain meaning of the words and intent of the testator as found in the will.

All exceptions are dismissed and the adjudication is confirmed absolutely.