## O'Neill Estate

*Paul Leo McSorley*, for accountant.

*Peter M. Mattoon*, for claimant.

*Edward A. O'Neill* and *John F. Thaete*, for legatees.

*Murray B. Dolfman*, for Commonwealth.

KLEIN, P. J., November 6, 1964.—Mary F. O'Neill died on February 11, 1963, unmarried and without issue, leaving a will, which was admitted to probate on February 21, 1963, when letters testamentary were granted. Proof of advertisement of notice thereof was produced to the auditing judge.

By her will testatrix, after directing the payment of her debts, bequeathed $1,000 to Saint Patrick's Roman Catholic Church, Philadelphia, General Fund; $1,000 to Saint Patrick's Roman Catholic Church, Philadelphia, to be used for masses for her parents and deceased brothers; $200 to Mrs. Carl Pfeil; $7,000 to her nephew, William J. O'Neill; and $500 to each of her nephews and nieces, John O'Neill, James J. O'Neill, Mary T. O'Neill Urso and Anna O'Neill Bellwoar. After certain specific directions with respect to inheritance tax

which will be considered hereinafter, she devised and bequeathed her residuary estate to The Sacred Heart Free Home for Incurable Cancer. A copy of the will, certified by counsel to be a true and correct copy, is annexed hereto.

All parties in interest appear to be living and of age and are stated to have had notice of this audit.

Credit is taken in the account for the payment of inheritance tax in the sum of $1,704.03, and payment of same was duly vouched. Mr. Dolfman, representing the Commonwealth of Pennsylvania, entered an appearance claiming such transfer inheritance tax as may be due and assessed, and the awards herein contained will accordingly be made subject thereto.

Decedent's gross estate was approximately $17,000 and the amount left for distribution is about $14,000. Over a year prior to her death she opened a joint account with her own funds in the names of herself and her nephew, William J. O'Neill, in the Beneficial Mutual Savings Bank. At her death the nephew received $32,438.50 from this account. He is also the principal beneficiary under the will, being given a legacy of $7,000.

The Oliver H. Bair Company, who buried decedent, presented a claim for $1,619.15 for the funeral bill. Mr. Thaete, representing The Sacred Heart Free Home for Incurable Cancer, the residuary legatee, objected to the size of the funeral bill. He stated that he thought the bill "should not be in excess of $1,000, adopting the rule of thumb of the Inheritance Department in an estate of this size."

The funeral was ordered by William J. O'Neill, decedent's nephew. Following her death he found an undated paper executed by her, which states, inter alia:

"Upon my death, William J. O'Neill is to take full responsibility of all arrangements pertaining to my interment."

It could be seriously argued, although Mr. Thaete did not press the point, that the language used by testatrix, "take full responsibility of all arrangements," indicated that she intended that her nephew, who was getting about 80 percent of her worldly goods, should personally pay for her funeral.

From Mr. O'Neill's testimony it appears that decedent was crippled from birth and stood about three feet high. She never attended school, never worked and never married. Her income was less than $1,000 a year, received from rents from some houses she purchased with funds she had inherited. She apparently lived pretty much by herself and had an extremely limited social life. Only 15 persons attended her funeral, all of them members of her family.

An undertaker's recovery from the estate of a decedent for the funeral must be reasonable under all of the circumstances, taking into consideration the decedent's station in life and the size of the estate. See Ennis' Estate, 76 Pa. Superior Ct. 292 (1921), and the host of cases cited in Hunter's Pa. O. C. Commonplace Book.

The auditing judge is of the opinion that $1,000 is the maximum that should be allowed for the funeral under the circumstances of this case and it will be so awarded.

Under the will, the testatrix gave two gifts of $1,000 each to St. Patrick's Roman Catholic Church and numerous other pecuniary legacies to designated individuals. She left the residue of her estate to The Sacred Heart Free Home for Incurable Cancer. No reference was made to the payment of transfer inheritance taxes, except in the Seventh Item which provides:

"SEVENTH: I direct that any inheritance taxes on the bequests contained in the Second (2nd) and Third (3rd) Items, i.e., St. Patrick's Roman Catholic Church,

General Fund, and St. Patrick's Roman Catholic Church, shall be paid from my residuary estate."

Mr. Thaete contends that this direction evidences testatrix's intent that the tax on the other pecuniary bequests should be charged against such bequests rather than against the residuary estate.

On the other hand, Mr. O'Neill, in behalf of the nephew, William J. O'Neill, contends that the pecuniary legacies are all exonerated from payment of inheritance taxes and that such taxes should be borne by the residuary legatee.

Prior to the enactment of the Inheritance and Estate Tax Act of 1961, inheritance taxes were payable by the legatee, or out of the property passing to him, unless the will clearly indicated otherwise: See Brown's Estate, 208 Pa. 161 (1904); Penn-Gaskell's Estate, 208 Pa. 342 (1904); Rettew's Estate, 142 Pa. Superior Ct. 335 (1940). Section 718 (a) of the act changed existing law and provided, with respect to outright devises and bequests:

"In the absence of a contrary intent appearing in the will, the inheritance tax imposed by this act on the transfer of property passing by will absolutely and in fee, shall be paid out of property forming a part of the residuary estate . . ."

See Gerner Estate, 29 D. & C. 2d 61 (1963); Lengel Estate, 14 Fiduc. Rep. 57 (1963). See also Comment of Joint State Government Commission on section 718 of the Inheritance and Estate Tax Act of 1961.

The residuary legatee relies principally upon Speitel Estate, 30 D. & C. 2d 338 (1963), an adjudication by Shoyer, J., of this court, in support of its position. In that case testatrix gave gifts of $5,000 each to 11 relatives and gifts of $2,500 each to two strangers. Two gifts to a nephew and a grandnephew were made "free and clear" of all taxes. Judge Shoyer held that each of

the other legatees had to bear the burden of the tax on his legacy. He said, at page 340:

"Had she *intended* to exonerate from these taxes any or all of the 11 other outright bequests, she would have so provided. Her failure so to do, since she knew how, can only be because she intended those legacies not to be relieved of the tax burden. . . ."

In our opinion, Judge Shoyer's ruling was correct.

Mr. O'Neill, attorney for the pecuniary legatees, attempts to distinguish the Speitel case on the ground that the gifts in that case were to individuals, not to charities. The distinction, which he claims to be important, is that the tax exemption clause in the present case, in connection with the gifts to the church, has no legal effect because gifts to charitable legatees are exempt from inheritance taxes in any event, whereas the gifts to individuals in Speitel were not so exempt. In our opinion, this distinction is without merit. We are not particularly concerned with whether the legacies to the church were actually taxable. What we are concerned with is the intention of testatrix as evidenced by the language she used in the seventh item of her will.

Our Supreme Court has stated on many occasions over the years that in construing testamentary writings testator's intention is the polestar and must prevail: Burleigh Estate, 405 Pa. 373 (1961); Dinkey Estate, 403 Pa. 179 (1961); Wanamaker Estate, 399 Pa. 274 (1960); Hope Estate, 398 Pa. 470 (1960). In every case, the intent of testator is to be gathered from the whole will. Every sentence and every word must be considered in forming a judicial opinion upon the document: Fletcher v. Hoblitzell, 209 Pa. 337 (1904). See also Burleigh Estate, supra.

Even the most careful scriveners, however, often fail to express in clear and precise language testator's desires and instructions. If this were not so, there would be little need for the complex system of probate

courts in this country and the elaborate body of rules which has evolved to ascertain testator's true intent.

One of the well-entrenched rules of construction is that the expression of one thing is held to be the exclusion of another.* See Packer's Estate (No. 2), 291 Pa. 198 (1927); Reighard's Estate, 253 Pa. 43 (1916). Similarly, legacies are commonly construed to have been created by implication, even where no specific language can be found in the instrument expressly making the gift. Thus a gift to A "for life", and if A dies without issue, then to B, is held to imply a gift to A's issue. Murray's Estate, 313 Pa. 359 (1933); See also Kraemer v. Safe Deposit Co., 1 Pa. Superior Ct. 4 (1895).

What was testatrix's intent in the present case with respect to the burden of inheritance taxes in the pecuniary legacies? It is clear that, had she said nothing, the two legacies to the church would not have been subject to tax and taxes on all of the other pecuniary legacies would have been payable from the residue. But testatrix did not remain silent. She directed that the taxes on the two legacies to the church be paid from the residuary estate. We cannot assume that this provision was inserted without purpose. We must give effect to it if reasonably possible. It is well settled that a construction of a will which renders every word operative is to be preferred to one which makes some words and sentences idle and nugatory: Horn Estate, 351 Pa. 131 (1945); Calder's Estate, 343 Pa. 30 (1941). See also Vandergrift Estate, 406 Pa. 14 (1962). We therefore conclude from an examination of this will from its four corners that testatrix intended, by *implication,* that all of the other pecuniary legacies should bear their own share of inheritance taxes. Any other construction would render Item Seventh completely purposeless.

---

\* **Expressio unius est exclusio alterus.**

We are reenforced in our conclusion by the factual situation of this case. If we adopted Mr. O'Neill's views and exonerated all of the pecuniary legacies from the payment of inheritance taxes, the residue would be so depleted that the residuary legatee would receive little or nothing from this estate. In view of the very generous manner in which decedent treated her nephew, it is difficult to conceive that she named The Sacred Heart Home for Incurable Cancer, one of our most highly regarded charities, as residuary legatee, merely as an empty gesture, intending them to receive little or no material benefits under her will . . .

And now, November 6, 1964, the account is confirmed nisi.