## Disston's Estate.

*Wills—Construction—Devise to widow—Life estate—Election to take against will—Trust—Remainders—Acceleration—Intention.*

1. It is a general rule that devises or bequests, subordinate to a life estate in the widow and contingent upon her death, or payment of which is postponed until then, become presently payable upon her election to take under the intestate laws; and as to its effect upon all claims under the will, her election is equivalent to her

death.  Exceptions to this rule must depend upon the expression or unavoidable implication of a contrary intent of the testator.

2. A testator is presumed to know that a widow's statutory rights are paramount, and that she may take against his will, and he is presumed also to know that the election of the widow to take under the intestate laws is equivalent to her death for the purposes of distribution, and that, unless his will plainly indicates a contrary intent, remainders are accelerated accordingly.

3. The literal provisions of a will may be departed from so as to carry out what appears to be a superior or preferred intent; but, when this is done, the object in view must always be to approximate as closely as possible to the scheme of the testator which has failed by reason of intervening rights or circumstances.

4. Where a widow so long as she lives is to receive a part of the income of testator's whole estate and the balance of income, during her life, is given to testator's children, with remainders of principal to the same children at the widow's death, her election to take under the intestate laws will terminate a trust created for the purpose of holding the estate intact for her benefit, and accelerate the estates of the children just as effectually as though the provision for the widow were that she was to enjoy the entire income during her life, and the fact that the remainders given to the children may be contingent, or that alternative remainders may be provided for in the event of the decease of such children in the lifetime of the widow, will not take a case out of the operation of the general rule, if, on a view of the whole will, or the particular part in question, such alternative remainders appear to be merely secondary or substitutionary in character.

5. An intent that there shall be no acceleration can be shown by inevitable implication, as where the will itself fixes a definite time for distribution independently of the widow's death, or expressly provides as to the effect of her refusal to take thereunder; or where a trust is created not simply to guard the widow's life interest, but also for the benefit of a third party other than either the widow or remaindermen; or, where, during the life of a widow, the whole income is given to her and another, the latter of whom, for apparent reasons, the testator would specially desire to enjoy his bounty to the full extent indicated, and, after the life estate of the widow, remainders are limited to others in addition to such other, so that, in case of acceleration, the income intended for the latter would be materially diminished during an appreciable period of time; or where the contingency upon which the remaindermen are to take is such that the persons entitled can be ascertained only by the physical death of the widow.

6. Testator devised his residuary estate in trust, providing a

$10,000 annuity for his sister-in-law for life, and directing that the remaining income, and after the death of the annuitant, all income, be divided equally between the testator's widow, his son and daughter, and further that, subject to the annuity, at the death of his widow, the son and daughter should each receive one-half of the principal; and in the event of the death of either child before the widow testator bequeathed remainders over of such deceased child's share of the income. The widow elected to take against the will, and the son claimed one-half of so much of the principal of the estate as remained after his mother had been paid her share under the intestate laws, subject first to the rights of the annuitant. The lower court held that the son's share must remain in trust so long as the widow lived, in order to prevent the son from controlling the principal during that period and to permit the alternate gifts in remainder to become effective should the son die in his mother's lifetime. *Held,* the election of the widow to take against the will terminated the trust the same as though she had died, and operated as an acceleration of the son's interest, and the decree was reversed.

Argued March 21, 1917. Appeal, No. 84, Jan. T., 1917, by William Dunlop Disston, from decree of O. C. Philadelphia Co., April T., 1916, No. 369, dismissing exceptions to adjudication in Estate of William Disston, Deceased. Before Brown, C. J., Stewart, Moschzisker, Frazer and Walling, JJ. Reversed.

Exceptions to adjudication. Before Dallett, P. J.

The facts appear by the opinion of the Supreme Court.

The lower court dismissed the exceptions to the adjudication, in an opinion by Gummey, J.

William Dunlop Disston appealed.

*Errors assigned,* among others, were in dismissing the exceptions to the adjudication.

*Joseph Gilfillan,* of *Graham & Gilfillan,* for appellant.

No paper book was submitted for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, April 16, 1917:

The question in this case is whether or not a certain interest in remainder has been accelerated by the election of a widow to take against her husband's will. The court below held in the negative, and William Dunlop Disston, the remainderman in question, has appealed.

The testator, William Disston, died April 5, 1915, leaving a will wherein he devised his residuary estate in trust to keep the principal invested, collect the income, and pay therefrom to Estelle M. Dunlop, a sister-in-law, $10,000 per annum, during the term of her natural life; the remaining income, and, after the death of the annuitant, all income, to be divided equally between the testator's wife, his son (the appellant) and a daughter, Pauline Disston, the share of the latter being placed in trust. The testator then provided that in the event of the death of either his son or daughter, leaving issue, during the lifetime of his widow, the share of income of the one so dying should be paid to his or her issue; that should either of his children die without issue, during the lifetime of his widow, the income of the one so dying should be paid in equal shares to the widow and surviving child, so long as the former lived; further, that, upon the death of such surviving child, without issue, during the lifetime of his or her mother, all income, subject to the payment of the before-mentioned annuity, should go to the testator's wife. As to the principal, subject to the annuity, at the death of his widow, the testator gave one-half of his residuary estate to his son, providing, however, that should the son then be deceased, the share in question should go to the latter's issue; the other half he directed should be retained by the trustees named in his will, the income therefrom to be paid to his daughter for life, with remainder to her issue; he then provided that if either of his children should be dead, without issue, at the decease of his widow, the share of the one so dying should be paid to or held for the survivor; finally, should both children be so deceased, he gave the principal

of his residuary estate to his nephews and nieces or their issue living at the time.

The testator's widow elected to take against his will, and, at the audit of the executors' account in the Orphans' Court, the son claimed one-half of so much of the principal of the estate as remained after his mother had been paid her share under the intestate laws; but he conceded that a sum sufficient to meet the annuity should be set aside for that purpose. The court below determined, however, that the son's share must remain in trust so long as the widow lived, in order to prevent him from controlling the principal during that period, and to permit the alternative gifts in remainder to become effective should he die in his mother's lifetime. The appellant claims this was error; that both his and his sister's shares of the principal of the testator's estate were accelerated by their mother's election to take against her husband's will; and that, after a sufficient sum is set aside to assure the payment of the annuity, he is entitled to an absolute award of one-half the residue.

The relevant rules of law are well settled with us. In Ferguson's Est., 138 Pa. 208, 219, speaking by Mr. Justice MITCHELL, we state the cardinal principle thus: "Devises or bequests, subordinate to a life estate in the widow and contingent upon her death, or payment of which is postponed until then, become presently payable upon her election to take under the intestate laws; as to its effect upon all claims under the will, her election is equivalent to her death; this is the general rule, and if there are any exceptions, they must depend on the expression or unavoidable implication of a contrary intent of the testator." In Vance's Est., 141 Pa. 201, 213, we said: "The law must have a settled and uniform rule, and it is that, as to the provisions in a will for legacies subordinate to a life interest in the widow and contingent upon her death, or payment of which is postponed till then, her election to take against the will is equivalent

to her death." In Woodburn's Est., 151 Pa. 586, 589, we determined that this cardinal rule governed where, as in the case at bar, the testator gave his widow, for life, "not the income of one-third, but one-third of the income of the whole" of his estate; we there said: "To ascertain and secure such third, the whole estate had to be kept together, and such was undoubtedly the testator's intention."

The language last quoted is applicable here. It is apparent from a reading of the will that the testator's paramount intention was to create a trust during the life of his widow, so that she might enjoy the income from, not one-third of his estate, but one-third of the income from his whole estate, and that, after thus providing for his wife, the primary object he had in view was to benefit his children. In other words, the testator intended to leave his residuary estate, subject only to his sister-in-law's annuity, for the benefit of his wife and children, the former to receive one-third of the income for her life, and each of the latter a like proportion for the same period; when his widow's interest should terminate, he intended his two children to take the whole principal, the son's share being absolute and the daughter's continuing in trust; and it seems evident that he postponed this distribution until his widow's death for the reason that he desired the entire estate held intact, to secure her one-third of the income therefrom, rather than to set aside one-third of the principal for her benefit. Finally, the alternative remainders, after the devises to his wife and children, are substitutionary in character, and inserted to prevent the occurrence of a lapse should either or both of the children die during the continuance of the trust created for the purpose just indicated. This being the evident scheme of the will, and the plan having been interfered with by the widow's election to take her share under the intestate laws, the acceleration of the remainder interests given to testator's children would carry out his principal intent, and also adhere to his general plan

better than continuing the trust so that the secondary objects of his bounty might be afforded an opportunity to derive a possible benefit in the future.

In a case like the one before us, the effort must be to find and carry out the testator's chief intent with a minimum disturbance of the general plan of the will. After his wife, the testator's children were the natural and primary objects of his bounty, not their issue, still less nephews and nieces or their issue, and the alternative provisions for others, after the testator's children, were undoubtedly intended as substitutionary, in case the latter died during the life of their mother, should she take under the will; but, as said by Mr. Justice MITCHELL, in Vance's Est., supra (p. 209), a testator is presumed to know that a widow's statutory rights are paramount, and that she may take against his will; to which we now add that a testator is presumed to know also the general rule that the election of a widow to take under the intestate laws is equivalent to her death, and that, unless his will plainly indicates a contrary intent, remainders are accelerated accordingly.

Of course, an intent that there shall be no acceleration may be shown by inevitable implication, as, for instance, where the will itself fixes a definite time for distribution independently of the widow's death, or expressly provides as to the effect of her refusal to take thereunder (Reighard's Est., 253 Pa. 43, 53) ; or where a trust is created not simply to guard the widow's life interest, but also for the benefit of a third party other than either the widow or remaindermen (Young's Apps., 108 Pa. 17, 22) ; or, again, where, during the life of a widow, the whole income is given to her and another, the latter of whom, for apparent reasons, the testator would specially desire to enjoy his bounty to the full extent indicated— a mother, for example—and, after the life estate of the wife, remainders are limited to others in addition to the mother, so that, in case of acceleration, the income intended for the latter would be materially diminished dur-

ing, in all probability, an appreciable period of time
(Portuondo's Est., 185 Pa. 472) ; or where the contin-
gency upon which the remaindermen are to take is such
that, in the nature of things, the persons entitled can
be ascertained only by the physical death of the widow;
and, perhaps, other instances might be cited. Some of
these exceptions, and the Pennsylvania cases dealing
therewith, are well considered by Judge PORTER, of the
Superior Court, in a recent opinion handed down in
Wyllner's Est., 65 Pa. Superior Ct. 396, a case much like
the present; and interesting discussion by that eminent
jurist, the late Judge PENROSE, upon the general sub-
ject now before us, may be found in Keys's Est., 4 Pa. D.
R. 134.

To sum up our conclusions on the law and facts here
involved: In a case such as the one at bar, the literal
provisions of a will may be departed from so as to carry
out what appears to be a superior or preferred intent;
but, when this is done, the object in view must always be
"to approximate as closely as possible to the scheme of
the testator which has failed by reason of intervening
rights or circumstances" (Ferguson's Est., 138 Pa. 208,
220). Where the widow, so long as she lives, is to
receive a part of the income of the whole estate, and the
balance of income, during her life, is given to testator's
children, with remainders of principal to the same chil-
dren at the widow's death, her election to take under the
intestate laws will terminate a trust created for the pur-
pose of holding the estate intact for her benefit, and ac-
celerate the estates of the children just as effectually as
though the provisions for the widow were that she was to
enjoy the entire income during her life (Woodburn's
Est., supra) ; and the fact that the remainders given to
the children may be contingent (Coover's App., 74 Pa.
143, 147), or that alternative remainders may be provided
for in the event of the decease of such children in the
lifetime of the widow (Wyllner's Est., supra), will not
take a case out of the operation of the general rule, if,

on a view of the whole will, or the particular part in question, such alternate remainders appear to be merely secondary or substitutionary in character; see other cases, supra. As already indicated, we are of opinion that the trust created by the present testator was not intended to continue until the actual death of his widow, but only so long as she might have an interest in the estate passing under his will; when she elected to take against that instrument, the testator's full intent could not be carried out, and the trust came to an end to the same extent as though the widow had physically died; hence, the appellant's interest was accelerated, and the learned court below should have so held.

The decree is reversed and the record remitted for distribution in accordance with the views herein expressed.