## ACCELERATION OF A DEVISE OF CORPORATE STOCK LEFT IN TRUST.

Superior Court of Cincinnati.

### THE FOURTH & CENTRAL TRUST CO. V. THE HENDERSON LITHOGRAPHING CO. ET AL.*

Decided November 18, 1925.

*Trusts—Termination of, Where the Purpose Has Failed—Proceeds from Sale of Corporate Stock Placed in Trust to Insure Control—Subject to Distribution Upon Defeat of the Purpose of the Trust by Sale of the Business.*

Where stock is placed in trust for the declared purpose of insuring control of the corporation in the settlor's eldest son for life, with the direction that at the death of said son it be distributed in equal shares among the children of the settlor, a sale of the business during the life time of the eldest son, thereby rendering it impossible to further carry out the purpose of the trust, requires that a distribution of the proceeds be made at once, rather than that said proceeds be invested by the trustee and held in that form until the death of the said son before distribution is made to the designated heirs.

*Chas. B. Wilby* and *Clark Wilby,* for plaintiff.

*Buchwalter, Headley & Smith, Maxwell & Ramsey, Joseph Lackner,* and *C. F. Stenning,* for defendants.

MARX, J.

This case was commenced by the Fourth & Central Trust Company as trustee to determine its duty with respect to the distribution of the trust funds now in its possession. All of the parties concerned in said trust were made defendants and are before the court.

The case was fully heard upon the evidence and submitted to the court upon the able arguments of counsel for the respective parties.

The facts are not in dispute. On August 2, 1918, William D. Henderson, Sr., owned one thousand shares of the

---

* Same judgment entered on appeal (*Fourth & Central Trust Co. v. Henderson,* 21 Ohio App., 259).

common stock of the Henderson Lithographing Company. He transferred said stock to the plaintiff as trustee under the terms of a voluntary trust deed. The purpose of said trust was stated by the settlor as follows:

"Whereas, I, William D. Henderson, desiring to provide for the continuation of the influence of my son, Minto L. Henderson, in the management of the business of the Henderson Lithographing Company, and also desiring to provide for the equal distribution of my stock in that company among my children, or their heirs after my death. Now, Therefore  *  *  *  I have  *  *  *  transferred, etc."

The trustee was directed (1) to collect and pay the dividends accruing upon said stock to the settlor during his life and (2) to vote said stock as directed by the settlor.

By an amendment dated March 2, 1920, the settlor directed the trustee to vote the stock during his life as directed by his son Minto and upon Minto's death, as directed by his sons James and W. D., unless the settlor ceased to be president otherwise than by resignation or voluntary retirement, in which case the stock was to be voted as directed by him.

The third paragraph of the trust instrument provided:

"After my death, if my son Minto L. Henderson shall survive me, to pay the dividends collected on said stock, one-fourth to each of my four children, or to their heirs *per stirpes,* less the reasonable and proper charges of said trustee in the premises, during the life of my son Minto L. Henderson, and on his death to divide said stock into four equal parts, and to cause one of said one-fourth parts to be transferred to each of my children then surviving, and one-fourth *per stirpes* to the heirs of my children who are not then living, and this trust shall then terminate."

William D. Henderson died May 4, 1920. His son Minto survives him. The trustee voted the stock in accordance with the directions contained in the original trust instru-

ment and the amendment of March 2, 1920. During the life of the settlor, the dividends were paid to him. After his death the dividends were paid to his four children in equal parts until the death of his son William D., Jr., on October 1, 1923. Since his death, his one-fourth share has been paid to his widow Georgia as his only heir at law and sole legatee under his will, he having died without issue.

On May 23, 1925, the entire business of the Henderson Lithographing Company was sold for $1,010,709.83. All of the stockholders of the Henderson Lithographing Company voted in favor of the sale including Minto L. Henderson, who owned a majority of the stock, and the trustee. The purchase price has been paid and the sale completed. The Henderson Lithographing Company has been legally dissolved and is now out of existence. In place of one thousand shares of common stock of the Henderson Lithographing Company, the trustee now holds about $240,000 in cash.

Minto L. Henderson claims that this fund should be invested by the trustee in such securities as may be authorized by law and the interest thereon paid to the four children of the settlor or to their heirs *per stirpes* during the life of Minto and that on his death, the corpus be divided into four equal parts and that one-fourth be transferred to each of the children of the settlor then surviving and one-fourth *per stirpes* to the heirs of his children not then living. In other words, Minto L. Henderson claims that the money received from the sale of the stock held by the trustee should be reinvested and the interest thereon distributed and upon his death the fund be divided as provided in paragraph three of the trust deed above quoted.

All of the remaining children of the settlor and the wife and sole heir of his deceased child claim that the sale of the Henderson Lithographing Company and its subsequent dissolution has made it impossible to carry out the terms of the trust, and that the trust should be declared termi-

ated and the funds held by the trustee divided among the children of the settlor now surviving and the sole heir of his deceased child in equal parts.

The trustee properly takes neither side of the controversy, but asks the direction of this court as to its duty under the circumstances.

The sole question to be determined by the court is whether the trust created by the settlor for the control of his stock shall continue with reference to the money derived from the sale of such stock during the life of Minto L. Henderson and be terminated and distributed upon Minto's death, or whether said trust shall be declared terminated and distribution ordered now.

It is agreed by the contending parties that the purpose for which the trust was created and which was contemplated by the settlor can not be carried out. The purpose of the trust is clearly set forth by the maker who desired the trust in order to insure "the continuation of the influence of my son, Minto L. Henderson in the management of the business of the Henderson Lithographing Company" and "the equal distribution of my stock in that company among my children, or their heirs after my death." To effectuate this purpose, namely, the influence of his son Minto in the management of the business, he directed that after his death the stock should be held by the trustee until Minto's death and then distributed equally among his children.

A contingency not contemplated or mentioned by the trustor has now occurred, namely, a complete sale of the entire business and the dissolution of the Henderson Lithographing Company.

Under the terms of the trust, the duties of the trustee were to hold *specific stock;* to vote *specific stock;* to collect and distribute dividends on *specific stock,* and upon certain contingencies to distribute *specific stock.* None of these duties can now be performed. There is no stock to hold or to vote. There are no dividends to collect. There is no

business to manage.   The influence of Minto upon which the trustor relied for the management of the company can no longer be exercised.   In other words, the entire purpose of the trust has failed.   The trust is no longer capable of accomplishment.   When a trust fails or is impossible of fulfillment, the law is well settled that it should be terminated and the funds held by the trustee distributed.

To hold otherwise, would impose upon the trustee duties entirely foreign to the original purpose of the trust and would create a trust of money and bonds not contemplated or intended by the settlor.   A court of equity has no power to create a new private trust or a spendthrift trust where none was intended.   The doctrine of *cy pres* with reference to charitable trusts or trusts for public uses has no application in the present case.

It was never the intention of William D. Henderson, Sr., that the trustee should hold money, invest the same in bonds and pay the interest to his children.   He clearly desired that his children should ultimately own his stock in the Henderson Lithographing Company, but that the business should have the benefit to be derived from the management of his son Minto until Minto died.   Minto has himself made this purpose impossible of accomplishment by voting a majority of the stock in favor of the sale, and is not in a position to complain of a termination of the trust prior to the date when the same would have terminated had he continued to give the business the benefit of his management.   Nor can the trustee complain of the termination of the trust.   It is clearly settled that a trust will not be continued for the benefit of the trustee, and no other purpose would be served in the present case by continuing this trust after the failure of the original purpose.

In reaching this conclusion, we have followed what we consider to be the settled law expressed in *Robbins* v. *Smith*, 72 Ohio St., 1 at page 19, as follows:

"A trust will not be continued merely for the benefit of the trustee, and where the provisions named in the trust

which are inconsistent with the full beneficial ownership of the *cestui* are fulfilled, the *cestui* having the absolute equitable ownership, he is entitled, as he is also where it has become impossible to carry out the trust, to have the trust terminated."

See also *Rodgers* v. *Rea,* 98 O. S., 315.

It is properly the policy of the law to favor the vesting of estates rather than their suspension. *Tax Commission* v. *Oswald,* 109 Ohio St., 36, particularly at pages 52 and 53. *Linton* v. *Laycock,* 33 Ohio St., 128; *McArthur* v. *Scott,* 113 U. S., 340.

There is some analogy between the present case and cases in which property is left by will to a widow during her life and upon her death to the children. Where the widow elects not to take under a will—a contingency not provided for by the testator—it is held that distribution is accelerated and should be made at once without waiting until the death of the life tenant.

This doctrine of the acceleration of remainders is the law of Ohio. *Holdren* v. *Holdren,* 78 Ohio St., 276, Syl. 1.

In *Blocher* v. *Blocher,* 28 O. C. A., 46, it is held:

"In our judgment this renunciation on the part of the widow terminated the trust created in Item Two of the will and testament of John M. Blocher, deceased, and such act on the part of said widow accelerated the enjoyment of the devisees."

In an excellent opinion of the Common Pleas Court delivered by Judge Cushing, now on the Appellate Bench of this District, in *Dymond* v. *Dymond,* 22 O. D., 563, it is said at page 567.

"The law is that where a testator creates a life estate in his property, and the property is held for the purpose of securing to the life tenant the benefit devised to that tenant, and no other intention appears from the will of the testator, and the life tenant declines or is unable by reason of any legal incapacity to accept under the terms of the will, the life estate will be said to terminate and the period

of payment will be accelerated. In other words, the termination of the life estate will determine the time of distribution of the remainder."

The rule and its reason is carefully stated by Judge Dunn in *Sherman* v. *Flack,* 283 Ill., 457. He says:

"There is, however, another rule that, where there is a devise to one for life with a remaindedr to another, if the life estate fails for any reason the remainder is accelerated and takes effect at once. *Blatchford* v. *Newberry,* 99 Ill., 11. The doctrine of acceleration of remainders proceeds upon the supposition that, although the ultimate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way. The doctrine is founded upon the presumed intention of the testator that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may be still alive, and is applied in promotion of the presumed intention of the testator, and not to defeat his intention."

Another case much in point is *Diston* v. *Diston,* 257 Pa., 537. Without further elaboration of authorities, we refer to the comprehensive notes upon this question in L. R. A., 1918 B-62; 5 A. L. R., 460-473 and 481; 17 A. L. R., 314.

By analogy to the above cases, it may well be said that Minto has not continued to perform the duties of management under the trust agreement because it was for the best interests of all parties to sell the business as an entirety, and that since the reason for postponing distribution has failed or disappeared, distribution is accelerated and should be made at once.

In reaching this conclusion it has not been found necessary to determine the question, so well argued, as to whether the children took a vested interest by the terms of the trust. As is said in the note in 5 A. L. R., 473:

"The contingent character of the remainder does not prevent acceleration, but the identity of the persons who are to take becomes fixed upon the termination of the precedent estate."

Trust Co. v. Lithographing Co. [Vol. 26 (N.S.)

While the above analogies are interesting as showing that an application of the technical rules of law are in accord with the result reached, we think that the present case is determinable without reference to any aids to construction.

In our opinion, the trust created by William D. Henderson, with respect to specific stock for the purpose of continuing the influence of his son Minto in the management of the business, cannot possibly be carried out. It was clearly the intention of William D. Henderson, Sr., that upon the failure of his primary purpose by reason of the death of Minto Henderson or other contingencies not foreseen by him, that the corpus of the trust should then be divided equally among his children or their heirs *per stirpes*.

For these reasons, the trust created by William D. Henderson, Sr., will be ordered terminated and the trust estate distributed as soon as practicable in accordance with the intention of William D. Henderson, Sr.

A decree may be drawn in accordance with the opinion.