37 So.2d 204

**DECKER et al. v. DECKER et al.**

**8 Div. 437.**

Supreme Court of Alabama.

Oct. 14, 1948.

Mack Killcrease, of Albertville, for appellees.

T. Harvey Wright and Marion F. Lusk, both of Guntersville, for appellants.

STAKELY, Justice.

A question in this case is whether or not a certain interest in remainder has been accelerated by the election of the widow to dissent from her husband's will. The right of a widow to take against her husband's will is provided for in § 18 et seq., Title 61, Code of 1940.

Iness Decker is the widow of Paul Decker, deceased. George Paul Decker, a minor, is the only child of Iness Decker and Paul Decker, deceased. The will of the decedent was admitted to probate in the Probate Court of Marshall County, Alabama, on May 7, 1947. Iness Decker is the legal guardian of her minor son. The will is set out as follows.

"Know All Men By These Presents, That I, Paul Decker of Albertville, Alabama, being of sound mind and disposing memory, do hereby make and declare this to be my last will and testament, revoking any and all wills heretofore made by me at any time.

"1. I will that my funeral expense, and just debts be paid by my executor, as soon after my decease as practicable.

"2. I give and bequeath to my beloved wife, Iness Decker, all my property both real and personal which I shall die seized and possessed, or to which I shall be entitled at my decease to have and to hold enjoy and use during her widowhood or life as hereinafter provided.

"3. All the money left by me at my death, save and except enough to make safe a reserve fund to reasonably operate what farm land that I may leave, and for my executor to give my wife, Iness Decker the sum of $100.00 a month for comfort, and the care of my son, George Paul Decker, and the sum of $150.00 for each month that my son George Paul Decker is actually attending school, and my wife Iness Decker and George Paul Decker are to have my Home in which I am living at my death for their place of abode if they desire. All the rest of my money is to be loaned on first Mortgages on real estate, and it is my will that all my estate be kept together, with one exception as hereinafter provided.

"4. If my wife should marry again after my death, and before my son George Paul reaches the age of Twenty-one years, then, she is only to be entitled to the use and occupation of my home as mentioned by me in the preceding paragraph hereof, and in that event, my son, George Paul is to receive the sum of $50.00 a month during his minority, but in the case of the death of my wife before my son, reaches the age of Twenty-one years, then my executor is requested and required to pay my son the sum of $75.00 a month during his minority. Upon my son reaching the age of Twenty-one in such event, before the death of my wife then be becomes the owner of the home heretofore given my wife, to use at will with the exception taken in the next paragraph herein.

"5. I nominate and appoint my brother Bob Decker to be the executor of my estate, and direct that he be exempted from giving any official bond, or be required to answer to any Court concerning his actions so long as he is carrying out the provisions herein set out, and I further provide that his executorship is to last only during the minority of my son, George Paul Decker; that if my son George Paul is Twenty-one years of age at my death, he is to be the executor of my estate, and if not then he is to become the executor when he is Twenty-one years of age, and I further provide that my son as executor is required to keep my estate intact, not even to mortgage, sell or convey any of my estate until he is Thirty (30) years of age. All of my estate is to go to my son at the death of my wife, and to his children, and he dying without issue, then I will that my estate go to the living children of Bob Decker share and share alike.

"In witness whereof, I hereunto set my hand and seal, and publish and declare this to be my last will, on this the 5 day of December, 1939."

On May 7, 1947, R. B. Decker, the brother of the testator, who was nominated in the will as executor, was granted letters testamentary and took possession of all the property in the estate except a small garage apartment which testator was using as a temporary home at the time of his death.

On August 2, 1947, the widow filed her written dissent from the will and on the same date she and her minor son by her as next friend filed their bill of complaint in the circuit court in equity, praying (1) that the estate be removed to equity, (2) that R. B. Decker, although exempt by the will from giving bond, be required to give bond and account, (3) that the will be construed and its meaning and intention be declared, (4) that it be decreed that the widow's dissent had accelerated the remainder to the son George Paul Decker so as to make him the absolute owner of all the estate, subject to the widow's exemptions, dower and distributive share, (5) that the homestead and personal property exemptions of widow and minor son be set aside and (6) that the dower and distributive share of the widow be ascertained, set apart and delivered to her.

On August 7, 1947, the court entered an order of removal to the equity court. On December 19, 1947, after a considerable amount·of testimony was taken the court entered a decree requiring the executor to give bond in an amount not less than double the value of the personal property and estimated annual rents. On February 2, 1948, a bond in the sum of $200,000 was approved by the register.

On October 29, 1947, the executor filed a petition to be allowed to rent for his personal use one of two connected warehouses owned by the estate and situated on the railroad at Albertville. The petition was resisted. After a hearing before the register and report to the court, the court decreed that petitioner might rent the larger building at $110 per month without reference to the smaller building.

On January 14, 1948, the cause was submitted for final decree and on February 11, 1948, the court decreed (1) that the widow by her dissent became entitled to homestead and dower rights in all the property, (2)

that the son became the owner of the residue, subject to the widow's rights as defined in the decree and subject to defeasance should he die before reaching twenty-one in which event the substitutionary legatees would take and (3) that the executor take into control all the property not exempt to the widow and child and administer the same according to law and according to the will as interpreted by the decree, pending further orders of the court.

From the last mentioned decree the widow and the child each separately bring this appeal.

■ The general rule appears to be established in Alabama that dissent by the widow from the will of her husband with consequent renunciation by the widow of a life estate bequeathed to her by her husband is equivalent to its termination by the widow's death and accelerates a remainder provided by the will to take effect at her death. Merchants' Nat. Bank of Mobile v. Hubbard, 222 Ala. 518, 133 So. 723, 74 A.L.R. 646. In the case of Sherman v. Flack, 283 Ill. 457, 119 N.E. 293, 294, 5 A.L.R. 456, 460, it is said:

"The doctrine of acceleration of remainders proceeds upon the supposition that, although the ultimate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of a remainder to take effect in every event which removes the prior estate out of the way. The doctrine is founded upon the presumed intention of the testator that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may be still alive, and is applied in promotion of the presumed intention of the testator * * *."

But it is equally well settled that the doctrine of acceleration does not apply if it is evident from the provisions of the will that the testator did not intend that it should apply on the happening of such contingency. Merchants' Nat. Bank of Mobile v. Hubbard, supra. An intent that there shall be no acceleration may be shown for example, among other instances, when a definite time for distribution to the remainderman is fixed independently of the

widow's death or where the will expressly provides as to the effect of her refusal to take under the will. In re Estate of Disston, 257 Pa. 537, 101 A. 804, L.R.A.1918B, 62.

In the case at bar, however, there is more than a simple remainder. Here there is a contingent or alternative gift to the "living children of Bob Decker" in the event George Paul Decker, testator's son, should die without issue. In re Estate of Disston, supra; Keen v. Brooks, 186 Md. 543, 47 A.2d 67, 164 A.L.R. 1292. So the question may be properly asked whether the premature termination of a precedent estate accelerates a remainder where there is an alternative substitutional gift. So far as we are aware this exact problem has not been decided in this state. The question, however, has been decided in other states. The weight of authority clearly appears to support the view that where there is an alternative substitutional gift, this will not prevent acceleration, unless an intent to the contrary is manifest and further that when acceleration occurs, the interests of alternative substitutional remaindermen are eliminated. Keen v. Brooks, 186 Md. 543, 47 A.2d 67, 164 A.L.R. 1292, note page 1297; 5 A.L.R. page 460; 33 Am.Jur. p. 627.

The point has now been reached where we must undertake to ascertain the intention of the testator. It seems to us that all of items 3 and 4 and all of item 5 down to the words "all of my estate" must give way to the positive language of the testator that "all of my estate is to go to my son at the death of my wife." The following words "and to his children, and he dying without issue, then to the living children of Bob Decker", it further seems to us are subordinate to the primary and paramount purpose that on the death of the widow, the entire estate is to belong to the son. McCurdy v. Garrett, 246 Ala. 128, 19 So.2d 449; White v. Fowler, 245 Ala. 209, 16 So. 2d 399; authorities supra. After his widow, his son was the natural object of the testator's bounty, not his son's issue and still less nephews and nieces. In re Estate of Disston, supra. We think that the alternative remainders, as stated, are substitutionary in character and are provided for in the will to prevent a lapse should the son die before the life estate is terminated. In re Estate of Disston, supra. As pointed out the mandate that "all of my estate is to go to my son at the death of my wife" is clear and positive and should not be detracted from by the words "and to his children and he dying without issue then to the living children of Bob Decker."

" * * * 'The rule is that where an estate or interest is given in one clause of a will, in clear and decisive terms, the interest so given cannot be taken away or cut down by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate.' * * *" Duncan v. De Yampert et al., 182 Ala. 528, 62 So. 673, 675.

Every provision, with one exception, made in items 3, 4 and 5 down to the words "all of my estate" appears to be on the assumption that the widow would be living. The one exception is in item 4 as follows:

"In case of death of my wife before my son reaches the age of twenty-one years, then my executor is requested and required to pay to my son the sum of $75.00 a month during his minority."

This provision is perhaps in conflict with the final instruction that "all of my estate is to go to my son at the death of my wife." But the widow has dissented and the effect of her dissent on the remainder being normally the equivalent of her death, should we say that the foregoing provision shows an intent to fix the date of distribution at the time the son reaches the age of twenty-one years? We do not think so. The amount of $75.00 a month is too small in comparison with the size of the estate to show that the will fixed a definite time for the remainderman to take independently of the widow's death. The testator could easily by the provisions of the will have clearly shown that the time for distribution of his estate was when his son reached the age of twenty-one years. Yet he did not do so in the face of the presumption that he knew that his wife could dissent from his will

284

and that such election terminates the life estate bequeathed to her by his will and the remainder would be accelerated accordingly unless he plainly showed an intent to the contrary. In re Estate of Disston, supra; In re Hunter's Estate, 129 Neb. 529, 262 N.W. 41; Glover v. Glover, 108 Or. 61, 215 P. 990; 57 Am.Jur. p. 759.

■ But what is the effect of the provision in the will that "my son as executor is required to keep my estate intact, not even to mortgage, sell or convey any of my estate until he is thirty years of age"? Does this clause in the will indicate that the remainder interest shall be distributed at a time different from the death of the widow? It seems to us that this is a provision dealing with management of the estate and especially during the life and widowhood of testator's wife. It is a guard against ill advised change in the investments of the estate. It shows that any change shall only be made by the son as executor when he reaches an age which the testator regards as one of likely discretion. But the provision is not for the purpose of saying when the gift over shall take effect in the face of the mandate that "all of my estate is to go to my son at the death of my wife".

■ Taking all of the provisions of the will together it seems to us that the life estate in the widow was created merely for her benefit and not for the purpose of postponing division of the estate. Therefore it is presumably the intention of the testator that her dissent from the provisions of the will made for her benefit terminates the life estate bequeathed to her and the beneficiary entitled in remainder may take at once, subject to the statutory rights of the widow. Authorities supra; American Nat. Bank v. Chapin, 130 Va. 1, 107 S.E. 636, 17 A.L.R. 304. The beneficiary entitled to take at once is George Paul Decker, the son of the testator.

■ Iness Decker is the legal guardian of her son George Paul Decker. So we must determine whether Bob Decker is to be continued in office or the estate turned over to the legal guardian of the minor. "As the property devised or bequeathed to infant devisees or legatees, most usually goes into the possession of their guardians, after the executor shall have collected the estate of the testator and paid his debts, in order to allow it to remain with the executor, or to receive any other than its accustomed destination, the intention of the testator should appear from plain language or clear implication. * * *." Heirs of Capal v. McMillan, Adm'r, 8 Port. 197.

■ The intention of the testator appears to be to leave the management of the estate in the hands of Bob Decker until George Paul Decker reaches the age of twenty-one years. In fact the will provides that "his executorship is to last only during the minority of my son, George Paul Decker". Furthermore the will provides for payment by the executor of $75.00 per month to the son during his minority. Accordingly, final settlement will not be required at an earlier date. 21 Am.Jur. p. 660. But in this connection we point out that since the entire estate vests in George Paul Decker he should not be limited in all events to receive only the sum of $75.00 per month during his minority. No one else can be affected by change in the allowance. The equity court has full authority to direct such allowance to George Paul Decker from time to time, as the estate will permit, for his maintenance, support, education and other things in his behalf as may be proper. 27 Am.Jur. p. 824.

■ The widow complains that the decree of the court should not have limited her to homestead and dower. The point is well taken. She is also entitled to "such portion of the personal estate as she would have been entitled to in case of intestacy." § 18, Title 61, Code of 1940.

Upon consideration of the rental of the large warehouse building at $110.00 per month without reference to the smaller building, we are not willing to disturb the decree of the lower court. The proof showed that a reasonable rental for the larger building was $100.00 per month and $40.00 per month for the smaller building. True there appears to have been an offer for both buildings at $150.00, but this is a matter where the court, with the witnesses testifying orally before it, is in a better position to pass judgment than we can do on the record.

To sum up the situation, we hold that the widow's dissent accelerated the remainder to George Paul Decker and vested the fee in him, subject to the widow's exemptions, dower and distributive share in the personalty, which should be ascertained and set apart to her; that the extent and effect of the widow's separate estate on her dower also be ascertained and determined and the cause shall be retained subject to further orders of the court. The estate shall pay the cost of this appeal.

Affirmed in part and in part reversed, rendered and remanded.

BROWN, FOSTER and LAWSON, JJ., concur.