## Chandlee Estate

784

*MacCoy, Evans & Lewis*, for accountants.

LEFEVER, J., November 2, 1959. — Nannette B. Chandlee died September 18, 1958, having first made a will, dated March 10, 1958, by which she appointed her husband, Edward E. Chandlee, executor and trustee, and in the event he failed or ceased to act as such, and he has renounced both appointments, she appointed her sons, W. Blakeley Chandlee and Edward E. Chandlee, Jr., as executors and trustees. Letters testamentary were granted to W. Blakeley Chandlee and Edward E. Chandlee, Jr., on October 27, 1958.

Testatrix directed the payment of the expenses of her illness and funeral, "which may include the purchase of a cemetery lot, a gravestone and the setting aside of a sufficient sum for the maintenance thereof". She then directed that all estate, succession and inheritance taxes be paid from her residuary estate. She gave to her daughter, May Chandlee Foss, absolutely, if she survived testatrix (and she did) all her (testatrix') jewelry, furs and clothing together with all insurance policies in any way connected therewith. By item four testatrix gave to her husband, Edward E. Chandlee, if he survived her, $75,000 and all the remaining tangible personal property and effects together with insurance policies thereon, and in the event he predeceased her, she provided that all such

property be divided equally among her own children who survived her. Finally, by item five, she gave her residuary estate in trust, the net income therefrom to be paid to her said husband for life, and upon his death, or if he predeceased her then immediately upon her death, the principal or corpus "shall be divided into as many equal parts or shares as there shall be children of mine then living and children of mine then dead but represented by descendants then alive, and any share falling to any set of descendants shall be sub-divided among them per stirpes and upon the principle of representation, and thereupon each child or descendant so thus found entitled thereunto shall receive and take his or her share or portion of said corpus, absolutely and in fee simple and free and clear of all trusts." Testatrix further directed that any share which may vest in any minor should be retained in trust during his or her minority. Testatrix further provided that so long as "the trust shall continue . . . it shall be held in spendthrift trust to the fullest extent permitted by law. . . ."

Testatrix did not marry, nor were any children born to or adopted by her, after the execution of the will. She was survived by her husband, Edward E. Chandlee, her daughter, Mary Chandlee Foss, her two sons, W. Blakeley Chandlee and Edward E. Chandlee, Jr., and her three grandchildren, Evan G. Chandlee, 3rd, Elizabeth Y. Chandlee and David K. Chandlee, children of her deceased son, Evan Chandlee.

The surviving husband did not file a formal election to take under or against the will, but formally executed and acknowledged two instruments designated, "RENUNCIATION". In the first, dated February 18, 1959, he renounced "the life estate given to me by Item Five of the will of my late wife Nannette E. Chandlee, who died on September 18, 1958, and also the legacy of $75,000. given me by Item Four

thereof". In the second, dated September 16, 1959, he renounced "my right to act as trustee under the will of Nannette B. Chandlee, who died on September 18, 1958, with the result that under the terms of the will my sons W. Blakeley Chandlee and Edw. E. Chandlee, Jr. will act as trustees in my place." The two instruments are hereto annexed.

W. Blakeley Chandlee, by formal "RENUNCIATION", dated March 2, 1959, and annexed hereto, renounced "the remainder interest given to me by Item Five (b) of the will of my mother Nannette B. Chandlee who died on September 18, 1958, provided that as a result of my renunciation my interest will pass per stirpes to my issue living on September 18, 1958. If my interest will not pass in this manner, this renunciation shall be void and of no effect."

Paragraph (f) of the statement of proposed distribution states that the surviving husband does not claim the family exemption.

Vouchers have been produced showing payment of transfer inheritance tax in the sum of $2,640, less five percent discount of $132, and in the further sum of $88.06. The latter payment was made subsequent to the filing of the account and credit for the $88.06 is allowed.

Notice of the audit has been given to the husband, to testatrix' three surviving children, who are of age, to the mother, as natural guardian of the three minor grandchildren, issue of the deceased son, to an adult granddaughter, one of the children of W. Blakeley Chandlee, and to the mother, as natural guardian of the other two minor children of said son. Notice was also given that accountants take the position: (1) That the effect of the surviving husband's renunciation of the $75,000 bequest and his life estate in the residue is to accelerate the remainder interests, so that the residue vests and passes to decedent's children and

issue of deceased children as provided in the will, and (2) that the share which the son, W. Blakeley Chandlee, has renounced on condition only it will pass to his living issue, shall go and pass to such issue.

At the audit, counsel for the accountants submitted a comprehensive brief covering the questions of law.

A surviving spouse has the right to formally elect to take against the will. This causes an acceleration of the remainder gifts because the husband's election is deemed tantamount to his death: Disston's Estate, 257 Pa. 537 (1917).

It is well settled at common law that a renunciation or disclaimer "will relate back to the moment when the gift was made and prevent it from ever taking effect": Bute Estate, 355 Pa. 170, 174.

Section 3(a) of Estates Act of April 24, 1947, P. L. 100, as amended 20 PS §301.3, provides:

"Any power of appointment, or power of consumption, whether general or special, other than a power in trust which is imperative, and any interest in, to, or over real or personal property held or owned outright, or in trust, or in any other manner which is reserved or given to any person by deed, will or otherwise, and irrespective of any limitation of such power or interest by virtue of any restriction in the nature of a so-called spendthrift trust provision, or similar provision, may be released or disclaimed, either with or without consideration, by written instrument signed by the person possessing the power or the interest and delivered as hereinafter provided, but nothing in this section shall authorize *an income beneficiary of a spendthrift trust to release or disclaim his right to such income, unless as a result of the release or disclaimer the released or disclaimed income will pass to one or more of the beneficiary's descendants.*" (Italics supplied.)

Moreover, section 14(9) and (10) of the Wills Act

of April 24, 1947, P. L. 89, 20 PS §180.14, provides for the substitution of issue of a disclaiming beneficiary as to a bequest or devise *where such beneficiary is a lineal descendant of testator*, unless there is a contrary intent appearing in the will or "the disposition thereof shall not be otherwise expressly provided for rently, he also renounced his life estate in the so-called by law", which is not the case here.

Therefore, when the surviving husband renounced his $75,000 legacy, it fell into the residuary estate. See Bronstein Estate, 86 D. & C. 150. When, concurresiduary trust estate, the "income" inured for the benefit of "one or more of the beneficiary's descendants". The provisions of the antilapse statute, section 14 of the Wills Act, concern "a devise or bequest", and, clauses (9) and (10) thereof embrace and include a devise or bequest which "is released or disclaimed by the beneficiary". Running through the cases involving the spouse's election to take against the will, is the philosophy that the renunciation of the life estate is equivalent to the prior death of the life tenant so that the remainder, vested or contingent, is accelerated to testator's death. The auditing judge rules that under all the facts and circumstances this is so in this case. Accordingly, the residuary estate, as augmented by the $75,000, devolves as though the husband had died. Similarly, the share of the son, W. Blakeley Chandlee, devolves as though he also were dead.

The auditing judge is fortified in this conclusion by the fact that the accountant has given notice of its position to the parties in interest, as required by rule *63.1(c) of this court, and no one appeared at the audit to register disapproval of that position. Hence, this is not unlike a family settlement agreement, which this court fosters and approves, since the interested parties are members of the family. The awards suggested by accountant will accordingly be made. . . .

And now, to wit, November 2, 1959, the account is confirmed nisi.