# CASES DECIDED

## IN THE

# Supreme Court of Appeals

## OF VIRGINIA

## Wytheville.

### AMERICAN NATIONAL BANK V. C. C. CHAPIN, TRUSTEE, ET AL.

#### June 16, 1921.

1. RECORDING ACTS—*Torrens Act—Building on Two Lots, Title to One of Which is Not in Dispute—Case at Bar.*—Petitioner, a bank, sought to register title under the torrens act (Acts 1916, pp. 70, 558; Code 1919, sec. 5225) to two lots occupied by its bank building. As to the title to one of these lots there was no dispute, whereas as to the other the lower court found that the title was subject to certain contingencies set out in the will of a former owner, and refused to issue a certificate of absolute title as to both lots. The petition treated the two lots as constituting a single piece of property, and did not ask for the registration of one distinct and separate from the other. Therefore, the failure to issue a certificate as to the lot, the title to which was in dispute, was not error. Moreover, the bank building occupied both lots, and the lower court would have been entirely warranted, under the facts of the case, in holding that the title to one lot was not proper for registration separate and apart from the other, even if the petition had contained a distinct prayer to that effect.

2. WILLS—*Several Testamentary Papers Constituting Will —Inconsistencies—Case at Bar.*—A testator died leaving several testamentary papers. A former decision of the Supreme Court of Appeals (*Gordon* v. *Whitlock*, 92 Va. 723, 24 S. E. 342) held that the two wills, with the two codicils, were to be taken together as constituting a testamentary disposition of the testator's estate; that the second will was not intended to stand

1

alone in substitution for the first and did not revoke the first "except in so far as it is plainly inconsistent with it." In the instant case certain inconsistencies and conflicts between the two papers as to the time for the division of the estate and the provision for the widow were construed to affect only the early administration and management of the estate, without affecting the final division of the estate into two parts, one of which belonged to the widow for life with limitations over, and the other of which should go to the children or their issue when the time for the division arrived.

3. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Acceleration—Intention.*—The doctrine of acceleration of remainders is controlled by the intention of the testator or donor.

4. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Acceleration—Contingent Remainders.*—There can be no acceleration of a contingent estate from any cause or occasion not expressly or impliedly contemplated or intended by the person creating the estate.

5. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Acceleration—Renunciation of Will by Widow.*—A testator bequeathed a part of his estate to his wife for her natural life and at her death to his children then living and to the issue of deceased children. Testator's leading intent was to make provision for his wife and children. He understood and had in contemplation the possibility of his widow's renunciation of the will, but made no provision to meet that contingency. It was argued that this was a circumstance to show that the testator did not intend an earlier division of his estate among his children if the widow should elect to take against the will.

*Held:* That testator must have intended that the renunciation of the will by his wife should have the effect of eliminating the period of her lifetime as a factor in the estate of the children, the life estate having been created for the benefit of the widow and not for the purpose of postponing the division of the estate.

6. REMAINDERS, REVERSIONS AND EXECUTORY INTERESTS—*Acceleration—Renunciation of Will by Widow—Vested and Contingent Remainders.*—Where it appears that the possession of the remaindermen is postponed solely for the benefit of the widow of the testator, it is presumably the intention of the testator that her renunciation of the provisions made for her life is equivalent to her death, and the beneficiaries entitled in remainder enter into enjoyment at once, and in the application of this principle there is no distinction between vested and contingent remainders.

Appeal 'from a decree of the Court of Land Registration for the city of Richmond in a proceeding to register title to property under the uniform land registration act. Decree for defendants. Petitioner appeals.

*Reversed.*

The opinion states the case.

*Jas. E. Cannon, E. C. Massie* and *Geo. Bryan,* for the appellant.

*Daniel Grinnan* and *Leake & Buford,* for the appellee.

KELLY, P., delivered the opinion of the court.

This suit was brought under the provisions of the uniform land registration act (Acts 1916, pp. 70, 558; Code 1919, sec. 5225). The petition was filed by the American National Bank, of Richmond, and the object was to register the title to the lots known as Nos. 1001 and 1003, occupied by the American National Bank building, and the lot known as number 1005, occupied by the American Trust Company building. The principal question for decision, however, involves no peculiar phase or feature of the land registration act, and might have arisen in any other proceeding requiring an adjudication upon the title.

[1] There being no controversy as to the title of the petitioner to lot No. 1005, the proceedings as to that property were severed, as permitted by section 41 of the act, and a final decree was entered directing the issuance of a certificate as prayed for. But as to lots 1001 and 1003, the court refused to order a certificate of absolute title on the ground that lot 1003 (one of the two lots occupied by the bank building) "is subject to the contingencies set out in the will of Charles E. Whitlock," a former owner.

One of the assignments of error is that the court ought at least to have ordered a certificate as to lot 1001, the title to which was not in dispute. We overrule this assignment. The petition treats the two lots as constituting a single piece of property, and does not ask for the registration of 1001 distinct and separate from 1003. Moreover, the petitioner's bank building occupies both lots, and, under the facts of this case, the court would have been entirely warranted in holding that the title to 1001 was not "proper for registration" (section 44 of the act) separate and apart from 1003, even if the petition had contained a distinct prayer to that effect.

The important and decisive question in the case is whether the petitioner showed a complete title to lot 1003.

This lot was owned in fee-simple absolute by Charles E. Whitlock, who died in 1895, leaving certain testamentary papers, which together were judicially ascertained to constitute his will, and duly admitted to probate as such. See *Gordon* v. *Whitlock*, 92 Va. 723, 24 S. E. 342. At his death he was survived by his widow, Elizabeth B. Whitlock, and three infant children, Elizabeth, Lulie, and Charles Whitlock. The widow renounced the will, and claimed her dower and distributive share in the estate. This action on her part, as will presently appear, necessarily upset a very material portion of the testamentary scheme, and in the end brought about the controversy arising in this case. The estate was large and valuable. A number of suits were brought in the courts of the city of Richmond for various purposes affecting its administration and distribution. In one of these, by decree of October 27, 1896, lot 1003 was assigned to the widow as part of her dower. Subsequently, by deed dated April 12, 1909, the widow and her three children, all of whom had become of age, granted and conveyed lot 1003 to the petitioner, American National Bank.

The inquiry before us is whether this deed passed a good title.

The question arose out of the following further facts, taken in connection with those already stated: Prior to April 12, 1912, Ellzabeth Whitlock, one of the daughters of the testator, intermarried with Frederick Godfrey Bird, of England, reserving by a marriage settlement deed all of her estate as fully as if she had remained unmarried. Lulie Whitlock, the other daughter, married W. Otto Nolting and became a widow. At the date of the deed to the bank, April 12, 1909, Elizabeth Whitlock Bird had an infant son, and Lulie Whitlock Nolting an infant daughter. Mrs. Nolting afterwards married Rev. G. Freeland Peter. Charles Whitlock, the testator's son, afterwards married and died without issue, leaving a widow, Lettice W. Whitlock. At the time this proceeding was instituted, the following parties were living: Elizabeth Whitlock, the testator's widow; Elizabeth Whitlock Bird and her husband Frederick Godfrey Bird and their five infant children (four born after the deed to the bank) ; Lulie Whitlock Peter, her husband G. Freeland Peter, and her two infant children Elizabeth Nolting and G. Freeland Peter, Jr.; and Lettice W. Whitlock, widow and sole residuary legatee and devisee of Charles E. Whitlock, Jr.

The first of the several testamentary papers left by the testator was dated April 24, 1888, and appears to have been prepared by counsel. It is a voluminous, elaborate, and carefully phrased document, providing in great detail for the administration and final distribution and settlement of the estate. After making a number of specific devises and bequests, and giving a number of directions to his executors, the testator provided by the eleventh clause as follows: "All the rest and residue of my estate of every description, including the real estate hereinbefore directed to be sold, and the proceeds of the sale thereof, I devise and bequeath

to my executors for the term of five years from and next
ensuing after the day of my death, upon these trusts." And
the trusts named were to care for and husband and prop-
erly invest the estate, and during the specified five year
period pay one-half of the net annual income to the widow
and the other half of such net income to themselves and
properly invest the same as guardians of his infant chil-
dren. The twelfth clause was as follows: "At the end of
said term of five years, I direct that my estate, real and
personal (other than uncollected debts, and lands herein-
before devised to be sold, and other than uninvested money
belonging to the principal of my estate), shall as nearly as
may be, be divided into equal parts, having reference to
value and income. One of these equal parts I devise and
bequeath to my children to be divided equally between them,
but if any of my said children shall die under the age of
twenty-one years, unmarried, or if married shall die under
the age of twenty-one years and without issue living at
the death of such child, then his or her share of said equal
part shall pass and belong to the survivor or survivors of
said children, but if at such death there be living but one
survivor and also issue of a deceased child or children;
then to such survivor and the issue of such deceased child
or children; such issue to take the part their parent would
have taken if alive. But if all of my said children shall
die under the age of twenty-one years and without issue,
then the whole of said equal part shall pass and belong to
my right heirs at law as to the real estate included in said
part and to my distributees as to the personal estate in-
cluded in said part, according to the law of descents and
distribution in the State of Virginia. *The other of said
equal parts I devise and bequeath to my wife for and during
her natural life, to take the income rents and profits thereof
to her own absolute use and disposal, and at her death I*

*devise and bequeath the said equal part, and also the dwell-*
*ing house and lot of mine, which she may elect to occupy,*
*to such of my children as may be living at her death, and*
*to the issue of any such child who may have died leaving*
*issue, such issue to take the share their parent would have*
*taken if alive;* such of my children as may be twenty-one
years of age at the death of my wife shall take their por-
tions of such equal part, absolutely; such of them as may be
under twenty-one years of age at the death of my wife
shall take their portions of such equal part, subject to the
limitations prescribed in reference to their shares in the
first of said equal parts. But if at the death of my wife
there shall be no child of mine living not the descendant of
andy child, then the part of my estate devised to my wife for
her life shall pass and belong to my right heirs at law as to
the real estate included therein, and to my distributees as to
the personal estate included therein, according to the  law
of descents and distributions in the State of Virginia."
(Italics added.)

The fourteenth clause was as follows:  "I hereby ex-
pressly declare that the provisions which I have made in
this will for my wife are in lieu, place and stead of all her
dower rights and distributive rights in my estate real and
personal, wherever situated—and if accepted by her must
operate as a relinquishment of all such dower and distribu-
tive rights."

The second will or testamentary paper, was a brief holo-
graph document, containing no revocatory or residuary
clause, and, so far as material here, was as follows:
"1st.  I desire my estate kept together during the minority
of my youngest child.  2nd.  My wife to have the free use
of the residence 1" & East Franklin and to have absolutely
all the furniture and other belongings on said premises.
3rd.  My wife to have fixed by court, at least once every

three years, the income to be allowed her from my estate for the maintenance of herself and children."

There were two brief holograph codicils which have no bearing on the present controversy.

The court of land registration appointed a guardian *ad litem* to represent the infant children of Mrs. Bird and Mrs. Peter, and he contended in the lower court and contends here, with notable earnestness and force, that the twelfth clause of the first will did not create a vested remainder in the children of Charles E. Whitlock, but that by its terms his grandchildren now have a contingent estate in remainder which cannot be determined until the death of his widow, and that, therefore, the certificate of absolute title should not be decreed. The learned judge of the lower court took this view of the case, filing a written opinion setting forth with characteristic clearness and ability the reasons and authorities upon which his conclusion is based.

Counsel for the bank and for Mrs. Lettice W. Whitlock, whose interests are materially and adversely affected by the decree appealed from, offer several answers to the position takn by the guardian *ad litem* and sustained by the court.

[2] In the first place it is contended that the second will revokes and eradicates the provision in the first will devising and bequeathing one-half of the residuary estate to the testator's wife. In *Gordon* v. *Whitlock, supra,* it was held that the two wills, with the two codicils, were to be taken together as constituting a testamentary disposition of the testator's estate; that there was nothing in the scope or scheme of the second will to indicate that it was intended to stand alone and be in complete substitution for the first; and that the second did not revoke the first "except in so far as it is plainly inconsistent with it." Invoking the holding of the court in that case, as expressed in the language just quoted, the contention is made that there is such

a plain inconsistency between the gift to the wife with limitations over in the twelfth clause of the first will, and the provisions of the first, second and third clauses of the second will, as to show that the two papers, in this respect, cannot stand together, and that the latter must, therefore, be construed as a substitute for the former to that extent. To maintain this position it is pointed out, (1) that by the first will the residuary was to be held together for the period of five years from the testator's death, and then divided, whereas by the second will the estate was to be kept together until the youngest child became of age, without any provision as to a division or distribution, the effect, as claimed, being that the whole estate should be divided when the youngest child became of age; (2) that by the third clause of the second will the testator provided that his wife should have fixed by the court at least every three years the income to be allowed her from his estate for the maintenance of herself and children, this provision, as contended, being in lieu and revocation of the gift to her in the first will of one-half of the estate; and (3) that the second clause of the second will, giving Mrs. Whitlock the free use of the Franklin street residence, and the absolute ownership of the furniture, etc., was a substantial repetition of the second clause of the first will, which would have been a needless repetition unless the testator intended the second will to supersede the first as to the provisions for the wife.

There is force in the argument thus made, but we do not think the inconsistency and conflicts between the two papers are to be given the far-reaching effect claimed for them. It is entirely feasible to construe them so as to affect only the early administration and management of the estate, without affecting the final division of the estate into two parts, one of which would belong to the widow for life with limitations over, and the other of which should go to the

children or their issue when the time for the division arrived. The division of the corpus of the estate, instead of being made in five years from the death of the testator, would have been made when the youngest child became of age, and in the meantime, in lieu of the net income from one-half of the estate, given to his wife under the first will, she would have received an amount to be allowed by the court for the maintenance of herself and her children. The repetition of the provision as to the residence and furniture was unnecessary but not inconsistent.

In the second place, to meet the contention of the guardian *ad litem* and the holding of the lower court, it is argued that the twelfth clause of the will created, not a contingent remainder in the children and grandchildren, but a vested remainder in the children, subject to be divested and given over in case any of the vested remaindermen died during the lifetime of the widow. The decree complained of proceeds upon the theory that the remainders were contingent and that there can be no acceleration of such remainders. It is conceded that if the remainders were vested the decree is erroneous. In the view which we entertain, however, it is not necessary in this case to determine the technical character of the remainders.

[3, 4] It was said by this court in *Compton* v. *Rixey's Ex'rs*, 124 Va. 548, 98 S. E. 651, 5 A. L. R. 465, that "there can be no acceleration of a contingent remainder, for until the happening of the contingency it is uncertain who is to take the estate." But this expression must be read in connection with the context and the facts of that case. The opinion clearly shows that the doctrine of acceleration of remainders is, as of course it should be, controlled by the intention of the testator or donor. The true doctrine is that there can be no acceleration of a contingent estate from any cause or occasion not expressly or impliedly contemplated or intended by the person creating the estate. In the

*Compton Case* the provisions of the will indicated that the testator intended the whole of the estate to be kept together until his widow died or remarried; and, moreover, the widow did not renounce the will in the manner provided by law, but accepted its provisions and enjoyed its benefits for some years, and then, "for reasons satisfactory to herself and known to her children," executed a disclaimer and renouncement of the terms of the will in her behalf. The case, therefore, did not come within the general rule, based upon the presumed intention of the testator, that the election of a widow to take her share of the estate under the intestate laws in lieu of a life estate given her in the will is in legal contemplation equivalent to her death. The paper executed by Mrs. Rixey did not have the effect of ending the life estate so as to take it out of the way of the remainders. *Cummings* v. *Hamilton*, 220 Ill. 480, 77 N. E. 264; *Keston* v. *Tipton*, 184 Ky. 704, 212 S. W. 909.

[5]     In the case before us, it is clear from the testamentary papers that Mr. Whitlock's leading intent was to make provision for his wife and children. If he had not expressly shown, as he did by the fourteenth clause of the first will, that he understood and had in contemplation the possibility of her renunciation, he would have been charged with knowledge of her legal right to renounce and take her share in his estate under the intestacy laws; and he made no provision to meet that contingency. It is argued, and it seems to have been held (see 23 R. C. L., p. 559), that this is a circumstance tending to show that the testator did not intend any earlier division of his estate among his children if the widow should elect to take against the will. The argument does not appeal to us under the facts of this case. The testator knew that a renunciation by her would upset and completely cut out the life estate which he was creating in her and upon which the contingencies as to the interests

of the children depended.   With this possibility in necessary contemplation, he made no provision to meet it.   We think the result is that he must have intended that in such an event the renunciation should have the effect of eliminating the period of her lifetime as a factor in the estate of the children.   If, instead of renouncing the will in the manner provided by law, Mrs. Whitlock had accepted the terms of the will and then sold her life estate, or even given it to her children, a different question would have been presented. As the facts are, her life estate never came into existence. It was, as we construe the wills, created for the benefit of the widow, and not for any independent purpose of postponing the division of the estate.

It is simply impossible to reconcile the decisions bearing upon the question at issue.   Undoubtedly there is much respectable authority to the effect (1) that the remainders created by Mr. Whitlock's will were contingent, and not vested, and (2) that her renouncement of the will did not have the effect of accelerating them.   Other authorities, perhaps equally weighty, would support the conclusion that they were vested remainders, with a substantial gift over in case any or all of the primary remaindermen died before the death of the life-tenant; and, if this construction be adopted, there is practically no dissent from the conclusion that the renouncement would accelerate the enjoyment of the estate in remainder.   Still others, in keeping with what seems to us a sound view, hold that the contingent character of the estate does not prevent acceleration except where it is impossible to identify the remaindermen until the death of the life tenant, as, for example, where the limitation is strictly to the heirs of the body of the life tenant, or where there is other evidences, besides the mere provision for the life tenant, of an intention to postpone the taking of effect in remainder.   (See note to *Compton* v. *Rixey's Ex'rs,* 5 A. L. R., p. 473.)

[6]   In *Roe* v. *Doe,* 5 Boyce (28 Del.) 545, 93 Atl. 373, Ann. Cas. 1918 C, 409, also reported as *Scotten* v. *Moore,* 28 Del. 545, there was a devise to the wife for life and after her death to "my then living children (or in case of their death, to their legal representatives), share and share alike." The testator was survived by his wife and seven children. The widow renounced the will.   In a subsequent ejectment suit involving the title it was held that the remainders were accelerated whether they were contingent or vested.   The court said:   "The principle of acceleration in the vesting of a remainder by the premature termination of the preceding life estate rests upon the testamentary intention, and will be applied only when it promotes that intention, and never when it defeats it.   When, therefore, it appears that the possession of the remaindermen is postponed solely for the benefit of the widow of the testator, it is presumably the intention of the testator that her renunciation of the provisions made for her life is equivalent to her death, and the beneficiaries entitled in remainder enter into enjoyment at once, subject to her rights at law if she so elects. * * *

"If the principle is based on the presumed intention of the testator, there need be no distinction made between vested and contingent remainders in its application.

"If it be necessary to decide whether the remainder be vested or contingent, it will be found that the authorities are in hopeless conflict on this subject.   A devise to the testator's children, living at the death of a life tenant, as a class, with substitution of issue for any who may then be dead, is in some cases considered a vested remainder, and in other cases a contingent one."

In *Slocum* v. *Hagaman,* 176 Ill. 533, 52 N. E. 332, there was a devise to the wife for life and after her death the property was to be sold and the proceeds divided pro rata among the nephews and nieces and an adopted daughter of

the testator, share and share alike, with limitation over to the issue of such of the nephews and nieces as might die before the death of the wife. The widow renounced the will. The court said in the course of its opinion: "Upon examination of the whole will, we are of the opinion that the postponement of the division of the estate until the death of the widow was for the purpose of securing her income during her life, and that, when she renounced the provisions of the will * * * the reason for the postponement of the period of distribution no longer existed; and it was proper to make such distribution as though the widow had died."

In *Sherman* v. *Flack*, 283 Ill. 457, 119 N. E. 293, 5 A. L. R. 456, there was a devise to the wife for life, and at her death the real estate was to be sold to the highest bidder within one year from the time of her death, and after a payment of legacies to be divided among her brothers and sisters or their heirs, with remainder to testator's brothers and sisters or their heirs. The widow renounced the will, and then united with the testator's brothers and sisters in making a deed to the real estate. A brother and sister of the testator died after the conveyance leaving children, and question was raised as to the title. It was held that the remainders were accelerated by the widow's renunciation of the will, and that the deed was good. The opinion of the court was in part as follows: "It is insisted that an unsurmountable obstacle to the right of election and reconversion is that the remaindermen cannot be definitely ascertained until the death of the widow, and the briefs are devoted in great part to the discussion of the question whether the devise of the remainder to the brothers and sisters of the testator or their heirs was contingent or vested. The real question, however, is, What is the time of division? If that time has arrived, whatever may have been the contingency previously, it no longer exists, but the remainder is

vested.   The language of the will fixes the time for the sale and division at the death of the wife, and it is the settled rule that a devise to survivors, preceded by a life estate or other prior interest, will take effect only in favor of those who survive the period of distribution.   There is, however, another rule that, where there is a devise to one for life with remainder to another, if the life estate fails for any reason the remainder is accelerated and takes effect at once.   *Blatchford* v. *Newberry*, 99 Ill. 11.   The doctrine of the acceleration of remainders proceeds upon the supposition that, although the ultimate devise is in terms not to take effect in possession until the death of the life tenant, yet in point of fact it is to be read as a limitation of the remainder to take effect in every event which removes the prior estate out of the way.   The doctrine is founded upon the presumed intention of the testator that the remaindermen should take on the failure of the previous estate, notwithstanding the prior donee should be still alive, and is applied in promotion of the presumed intention of the testator, and not to defeat his intention."

It will be noted that *Sherman* v. *Flack, supra,* cites *Blatchford* v. *Newberry*, 99 Ill. 11, as authority for the acceleration of the remainders; and yet the opinion seems to concede that the remainders were contingent, since "the remaindermen could not be definitely ascertained until the death of the widow."   The actual holding in *Blatchford* v. *Newberry* was that the remainders were contingent and further that the wife's renunciation of the life estate given her under the will was not equivalent to her death and did not accelerate the remainders.   But there were peculiar facts in that case which warranted the court in holding that the testator intended the life estate to remain in existence until his wife's death for other reasons than those affecting her own interest and benefit.   The *Blatchford Case* is cited and reviewed in *Compton* v. *Rixey's Ex'rs, supra;* and while the decision and discussion in both cases are susceptible of

a construction lending support to the position contended for by the guardian *ad litem* in this case, both distinctly show that the doctrine of acceleration is not an arbitrary one, but depends upon the intention of the testator.

In *Rench* v. *Rench*, 184 Iowa 1372, 169 N. W. 667, there was a devise to the wife for life, remainder at the death of the wife to his daughter "if living, or to her issue, if any, if she be dead; and if she be dead without issue" then to a nephew. The widow renounced the will, and the court in dealing with the effect of the wife's renunciation on the title, held that it was unnecessary to determine whether the daughter of testator took a contingent or a vested remainder, or what was the nature of the nephew's interest; that "the rejection by the widow had precisely the same effect upon the life estate as her death would have had, if it had occurred at that time"; that "clearly her death would have completely vested the title and present enjoyment in the primary remainderman (the daughter), she being still living"; and that "the authorities are practically uniform," that renunciation is same as death "unless the will, by its terms, discloses a contrary intention."

In *Fox* v. *Rumery*, 68 Me. 121, there was a devise to the wife for life, "and after her decease, should my adopted son S. D. R. survive her," then to trustees for him; and in the event of the death of the wife and the adopted son without issue, remainder to his lawful heirs. The widow renounced the will, and it was held that the remainder was accelerated. The court, in the course of its opinion, said:

"What was the testator's intention? Are the terms of the will such that we can give effect to that intention consistently with the rules of law? These are the fundamental inquiries, upon the answers to which the rights and duties of these parties depend.

"The courts have, for a long time, inclined very decidedly against adopting any construction of wills which would re-

sult in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator. (Citing Redfield on Wills, Part II, c. 13, sect. 6, sect. 48.)

"In the interpretation of any particular clause in a will, we are to give effect to the intention of the testator as manifest from an examination of the whole will, when not inconsistent with the rules of law. The clause is to be considered in connection with all the others, and with the main design of the testator, and such a construction adopted if possible, as will give effect, to the whole and to the general intent, although thereby some departure from a literal construction of the clause in question may be necessary."

In *Small* v. *Marburg*, 77 Md. 11, 25 Atl. 920, there was a devise of a residence to the wife for life, the residue of the estate to two brothers "in equal shares, and in case of the death of either of my said brothers, the share of the said residence bequeathed to him shall go to his children." The will directed that the residence which went to the wife for life should become a part of the residuum of the estate at her death. She renounced the will and the executors and residuary legatees conveyed the residence to her in fee. It was held that the deed conveyed a good title. The court said: "If it be said that the testator in terms declared that the sale should take place at the death of his wife, it may be replied that in his mind the death of his wife and the termination of her life estate marked the same point of time. And it may also be said that in a vast number of cases the literal meaning of words and phrases has been made to yield to the ascertained intent of the testator, and that this will always be done when the meaning is sufficiently evident."

See also the following cases in which remainders, substantially similar to those involved in this case, whether re-

3

garded as vested or contingent, were held to be accelerated by the renunciation of the widow's life estate given her by will: *O'Rear* v. *Bogie,* 157 Ky, 666, 163 S. W. 1107; *Dean* v. *Hart,* 62 Ala. 308; *Randall* v. *Randall,* 85 Md. 430, 37 Atl. 209; *In re Schulz's Estate,* 113 Mich. 592, 71 N. W. 1079; *Yeaton* v. *Roberts,* 28 N. H. 459; *Parker* v. *Ross,* 69 N. H. 213, 45 Atl. 576; *Wilson* v. *Stafford,* 60 N. C. 646; *Coover's Appeal,* 74 Pa. St. 143, 145; *Ferguson's Estate,* 138 Ia. St. 208, 20 Atl. 945; *Disston's Estate,* 257 Pa. 537, 101 Atl. 804, L. R. A. 1918 B, 62; *Meek* v. *Trotter,* 133 Tenn. 145, 180 S. W. 176.

We are of opinion that the deed of April 12, 1909, from Mrs. Whitlock and her children to the bank passed a complete title to lot 1003, and that a certificate ought to be issued accordingly, subject only to the liens thereon shown in the report of the special examiner. The decree complained of will accordingly be reversed, and the cause remanded to the court of land registration for such further orders therein as may be requisite, in conformity with this opinion.

*Reversed.*