13239

BURKHALTER v. BREEDEN *ET AL.*

(160 S. E., 165)

66

*Messrs. Alva C. DePass* and *Charles B. Elliott,* for appellant,

*Messrs. Tison & Miller* and *W. M. Stevenson,* for respondent,

September 8, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The issues involved in this case are set forth in the decree of his Honor, Judge E. C. Dennis, who heard the cause on an agreed statement of facts. The decree, which his Honor issued, is satisfactory to this Court. The exceptions are therefore overruled, and the decree appealed from is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.

MR. JUSTICE COTHRAN dissents.

MR. CHIEF JUSTICE BLEASE (concurring) : I concur in the opinion of Mr. Justice Carter that the Circuit decree, dismissing the complaint, should be affirmed.

The determination of the question presented requires a construction of the will of the late Peter L. Breeden. Item 3 of the will and Items 5, 6, and 7 of the codicil are the only portions of the will that need be considered. These items, and the facts necessary for an understanding of the case, are set forth in the decree of the Circuit Court, which will be reported.

By reference to Item 3 of the will, it will be observed that testator definitely carved out two estates in the lands in question—one a life estate and the other an estate in remainder. The land in question is given to Alma E. Burkhalter "for and during her lifetime." "At the death" of Alma, it is to go to "her then living children, the child or children of any deceased child to take the share of his, her or their parent." But in the event that Alma should die "without children or lineal descendants" surviving her, the land is to go to testator's "surviving children upon all the terms, limitations and conditions as provided in this item."

It is clear the life estate definitely carved out is to continue during the lifetime of Alma; that the time for its termination and the time of the vesting of the estate in remainder is the death of Alma. No other time is fixed or contemplated for the vesting of the estate in remainder. It is equally clear that testator intended for his children to have life estates only in the direct devises to them, and also in the remainders over after the death of his children without children or lineal descendants. Effect must be given to that intention if possible.

After carving out the life estate and the estate in remainder, testator provided that the life estate was given to Alma "upon the express condition that" she "shall not in any way nor manner encumber said lands by mortgage or otherwise, and should" she "attempt to sell same, or suffer same sold by any legal process, then it is my will and I hereby cancel said life estate and will and devise said life

estate absolutely and forever to the remaindermen as provided and designated in the first part of this item."

· Had this last provision not been made, it is clear that Alma would have had an unconditional life estate, and that she could have enjoyed the same in possession or disposed thereof as and when she might see fit. Testator was willing and anxious for her to enjoy the same in possession, but unwilling for her to attempt to dispose thereof. In the event of any attempt to sell or encumber the said life estate by Alma, her interest therein is terminated and the life estate is devised to the remaindermen provided in the item. It is clear,· then, that by "cancel said life estate" testator never meant to terminate or destroy the same, for he expressly preserved the life estate and devised it to the same parties that would take the remainder.

The estate in remainder is a contingent remainder with a double aspect. *Faber v. Police,* 10 S. C., 376; *McElwee v. Wheeler,* 10 S. C., 392. The remaindermen are divided into two classes; the children or lineal descendants of Alma constituting the first class, and the surviving children of testator "upon all the terms, limitations and conditions as provided in this item," constituting the second class. The second class are not to take except in case of default of all members of the first class. Who are to take as remaindermen, then, cannot be determined until the death of Alma. The remainder cannot vest until that time.

Upon the attempted conveyance by Alma to plaintiff of the life estate, her interest therein ceased and the legal title thereto vested, not by the deed, but under the will, in plaintiff as the only member *in esse* of the first class of remaindermen. He has not an absolute estate in such life estate *pur auter vie,* however, as it is liable to open to admit other child or children that Alma may have. It is also liable to be defeated upon the death of plaintiff and any other child or children Alma may have without lineal descendants, prior to the death of Alma. In such event, the legal title to the life es-

tate would pass to the member or members *in esse* of the second class of remaindermen.

Since the life estate was not terminated upon the attempted conveyance by Alma, but expressly devised to others, it follows that there was, and will be at all times, from the date of the death of testator until the death of Alma, a life estate to support the contingent remainders, and since the remainder cannot vest until the death of Alma, it follows that there can be no merger of the life estate and the remainder—the two estates can never be vested at the same time in any one person or persons, as the date fixed for the termination of the life estate is the same date fixing the vesting of the remainder, to wit, the death of Alma.

Since the devise of the remainder in case of Alma's death without children or lineal descendants is not to testator's surviving children absolutely, but to them upon "all the terms, limitations and conditions as provided in this item," it follows that the default herein by the now living children of testator avails plaintiff nothing at this time. Those children may not be living at the time of the vesting of the remainder. If they are, the estate they would take must be determined by reference to the terms, limitations, and conditions of this item as to the direct devises, and by those terms, limitations, and conditions testator's children are given life estates only, with remainders to their then living children, etc. The only effect the default of testator's now living children could have would be to estop them, in case they be living at the death of Alma, as to their life estates in the remainder of the lands in question. The father of respondents now being dead, they would take directly as remaindermen in the event of the death of Alma without children or lineal descendants. They are, therefore, in no wise affected by the default of the now living children of testator.

It is clear then that by Item 3 of the will, the interest of Alma in the life estate was to continue so long as she did not sell or incumber, or attempt to sell or incumber the

same. That upon such an attempt to sell or incumber the same, the said life estate, *ipso facto,* passed to the designated remaindermen.

It is contended, however, that the codicil shows that testator intended to terminate the life estate upon an attempted conveyance or incumbrance thereof and to vest the estate in remainder in the remaindermen at that time. By reference to that instrument, it will be seen that testator ratified and confirmed the will "except as the same is altered and changed" by the codicil; that in Item 5 he provided that, "If any one of my children shall voluntarily attempt to sell or encumber by mortgage his or her interest in said lands, * * * then the life estate of such child shall *eo instanti* end and determine, and the estate provided in this will for the remaindermen shall immediately vest in such remaindermen." Reading this provision in connection with the other provisions of the codicil and of the will, it is clear that testator did not change, or intend to change, the provision made in Item 3 of the will. He only meant that the interest of the child so selling the life estate should cease, and the devise of the life estate in such event to the remaindermen should vest. It is clear that testator did not have in mind the remainder when he made this provision. If he had had, it would have been natural for him to have said "the life estate of such child shall *eo instanti* end and determine, and the estate in remainder shall vest." By "estate provided in this will for the remaindermen," it is manifest that testator meant the estate forfeited by the child attempting to sell the life estate to him or her devised. He did not intend to accelerate the vesting of the remainder. Indeed, there is no provision in the will or the codicil for the acceleration of the vesting of the estate in remainder.

I am clearly of the opinion, therefore, that the decree of the Circuit Judge should be affirmed.

Mr. Justice Stabler and Mr. Acting Associate Justice Cosgrove concur.

Mr. Justice Cothran (dissenting): This action was commenced October 3, 1929, and is for the purpose of quieting the title of the plaintiff to a certain tract of land, the fee-simple title to which he claims under the will of his grandfather, Peter L. Breeden, as will be explained.

The case was tried by his Honor, Judge Dennis, upon practically an agreed statement of facts, and on March 28, 1930, he filed a decree dismissing the complaint; from this decree the plaintiff has appealed.

It appears that Peter L. Breeden died on October 10, 1919, leaving a will; he was survived by his widow, Margaret E. Breeden, and three children, Alma E. Burkhalter, Margaret B. Holliday, and Julius A. Breeden.

The widow, Margaret E. Breeden, died on October 23, 1923, intestate.

The daughter, Alma E. Burkhalter, survived the testator, her father, Peter L. Breeden; the plaintiff, John B. Burkhalter, is her only child; she was made a party defendant to this action but defaulted.

The other daughter, Margaret B. Holliday, was also made a party defendant, and she likewise defaulted.

The son, Julius A. Breeden, died on May 29, 1924, survived by his widow, Anna D. Breeden, and six children, Peter L. Breeden, Westelle B. Miller, A. DuPre Breeden, Annie B. Laney, Margaret B. Laney, and Coke B. Breeden.

Peter L. Breeden, son of Julius A. Breeden, and A. DuPre Breeden, another son of the same, conveyed their respective interests under the will of their grandfather, Peter L. Breeden, by deed, to the other four children of Julius A. Breeden.

These four children of Julius A. Breeden answered the complaint denying the material allegations thereof, as devisees of their grandfather, Peter L. Breeden, and as grantees of P. L. Breeden and A. DuPre Breeden as above stated; Anna D. Breeden, the widow of Julius A. Breeden, was made a party defendant to this action, but defaulted.

The contest presented is between the plaintiff John B. Burkhalter and the four children of Julius A. Breeden; the plaintiff claiming as stated the fee-simple title to the land involved, and the answering defendants denying that title and claiming to be contingent remaindermen under the will. They claim that they as members of a class, have an interest in the land under the will, contingent upon the death of Alma E. Burkhalter, leaving no children or lineal descendant surviving her; in other words, that if John B. Burkhalter, the only child of Alma E., should predecease her, leaving no child or children, lineal descendant or descendants of Alma E. Burkhalter, the contingent remainder in them would take effect.

There is other real estate devised by the testator, but the only part of it involved in this controversy is that covered by the following devise to Alma E. Burkhalter, daughter of Peter L. Breeden, and mother of the plaintiff, John B. Burkhalter: "I will and devise unto my daughter Alma E. Burkhalter for and during her life-time only, one-half of my Adamsville Plantation  *   *   *   containing 373 acres *   *   *   and on the death of my said daughter I will and devise said lands absolutely to her then living children, the child or children of any deceased child to take the share of his, her or their parent  *   *   *   (Here follows a devise of the other half of the Adamsville Plantation, upon similar terms and conditions, to his daughter Margaret B. Holliday.) It is further my will that should either of my children die without children or lineal descendants him or her surviving, that in such event the lands herein willed to him or her for life shall go to my surviving children upon all the terms and conditions as provided above in this item.  *   *   *   It is further my will and the above devises for life to my three children in this item are made to them upon the express condition that they shall not in any way nor manner encumber said lands by mortgages or otherwise, and should either attempt to sell same or suffer same sold by any legal process,

then it is my will and I hereby cancel said life estate and will and devise said life estate absolutely and forever to the remaindermen as provided and designated in the first part of this item."

In a codicil the testator emphasizes the last clause thus: "If any one of my children shall voluntarily attempt to sell or encumber by mortgage his or her interest in said lands, * * * then the life estate of such child shall *eo instanti* end and determine, and the estate provided in this will for the remaindermen shall immediately vest in such remaindermen."

On May 4, 1923, Alma E. Burkhalter by a warranty deed, conveyed the life estate devised to her to her son (only child), the plaintiff John B. Burkhalter, and on May 7, 1923, he executed a lease to her of the land for a term of ten years at $400.00 rental per annum.

The plaintiff's contention is that when his mother conveyed her life estate to him, it terminated, and under the express provisions of the will, the fee-simple estate *eo instanti* vested in him as the one entitled to take as remainderman upon the expiration of the life estate.

It is not denied, cannot be, that Alma E. Burkhalter took a life estate in the land; if so, she had the legal right to convey that estate to any one she chose, for love and affection or upon a valuable consideration. It may be true, doubtless is, that the testator desired and expressed that desire in emphatic terms, that she should not do so, and imposed a drastic penalty, the annihilation of the life estate, in the event that she should act in opposition to his wishes; but the imposition of such penalty could not affect the legal power which had been conferred upon the life tenant; in fact, the operation of the penalty presupposes the power to do that which would provoke it.

I do not think that there can be a question but that the limitation, which provided for the termination of Alma E. Burkhalter's life estate upon her conveyance of the same, is valid and that it ceased thereupon.

The general rule is thus stated in 21 R. C. L., 327: "A restraint on alienation may be effected within certain limits by a provision that the estate granted shall be terminated if the grantee aliens it, and that such estate shall thereupon revest in the grantor or pass to some third person. * * * Accordingly an estate for life may be given with a provision that the estate shall go over to a third person on alienation made by the life-tenant either voluntarily or involuntarily, subject to the general limitations of the rule against perpetuities." See, also, note, 57 Am. Dec., 488, and 3 L. R. A. (N. S.), 676.

It is laid down by Sir Thomas Plumer M. R. in *Wilkinson v. Wilkinson,* 3 Swans., 515, that a provision in a will of a life estate that it is given on the express condition that if the donee shall assign or dispose or otherwise change his interest therein, such interest shall cease and determine, is valid. See, also, *Nichols v. Eaton,* 91 U. S., 716, 23 L. Ed., 254.

In *Heath v. Bishop,* 4 Rich. Eq. 46, 55 Am. Dec., 654, the Court said: "A testator or donor may give property with a limitation or condition annexed, that it shall revert, or pass to some third person, on the bankruptcy or insolvency of the first taker, or on an attempt by a creditor to subject it to the payment of his debts; and such a limitation would be valid." See, also, *Spann v. Carson,* 123 S. C., 371, 116 S. E., 427; *Howe v. Gregg,* 52 S. C., 88, 29 S. E., 394; *Symmes v. Cauble,* 85 S. C., 435, 67 S. E., 548. In fact, I do not understand that the proposition is at all questioned in the present case.

If it be true that the limitation upon the life estate is valid, and that the effect of the conveyance was to accelerate the possession of the fee in the remaindermen, as provided for in the will, that ends the case, and makes it unnecessary to consider the effect upon the contingent remainder in those who were to take in the event that Alma E. Burkhalter died without children or other lineal descendants. It may be ob-

served, however, that there can be no remainder, vested or contingent, in the absence of a preceding particular estate, which in this case perished by the conveyance.

The remainder to the children of Alma E. Burkhalter was clearly contingent upon their or their children surviving the life tenant. There was also a remainder to her children or lineal descendants living at the time of her death in fee simple under Section 5343, Code 1922, Vol. 3. Likewise the limitation over "to the suviving children of the testator if either of his children should die without children or lineal descendants him or her surviving" is clearly contingent. Ferne on Remainders (6th Ed.), 225; *McElwee v. Wheeler*, 10 S. C., 392; *Faber v. Police*, 10 S. C., 376; *McCrary v. Coggeshall*, 74 S. C., 42, 53 S. E., 978, 7 L. R. A. (N. S.), 433, 7 Ann. Cas., 693; *Mangum v. Piester*, 16 S. C., 316; *Snelling v. Lamar*, 32 S. C., 72, 10 S. E., 825, 17 Am. St. Rep., 835; 1st Tiffany Real Property (2d Ed.), 555, 11 R. C. L., 467.

The estate in remainder is a contingent remainder, as is quaintly expressed in the old books, "with a double aspect"; that manifestly refers to the estate which was to take effect as a remainder, to the entity, without reference to either class, possible successive remaindermen. It will not do to say that the contingent remainder in John B. Burkhalter, dependent upon the single issue of his surviving Alma E. Burkhalter, his mother, is a contingent remainder with a double aspect; or that the contingent remainder in the brother and sister of Alma E. Burkhalter, dependent upon her dying leaving no children or lineal descendant, is a contingent remainder with a double aspect. But looking at the estate in remainder as an entity, without reference to either possible takers, it is a contingent remainder with a double aspect, one aspect being the succession of John B. Burkhalter to the title, and the other that of the brother and sister of Alma E. Burkhalter, the latter of course being subordinate to the former and taking effect only upon its failure.

Professor Minor, in his Institutes, Vol. 2, Ed. 1877, makes the matter perfectly clear: "It is possible, however, even at common law, to limit two concurrent fees, by way of remainder, as substitutes or alternatives, one for the other, the latter to take effect in case the prior one should fail to vest in interest; although, if the prior does vest in interest, the subsequent limitation is immediately avoided. Thus, in case of a grant to A for life, remainder to Z and his heirs, and in case Z should die, leaving A, then to W and his heirs, the remainder in fee to W is to take the place of the remainder limited to Z in fee, in the contingency that A survives Z; but in the opposite contingency of Z's surviving A, Z's fee-simple remainder becomes vested in interest, and cannot be divested by any contrivance known to common law, so as to let in a subsequent remainder. Such a limitation as the one above stated is called a limitation on a contingency in a double aspect, and sometimes a remainder on a double contingency. (*Loddington v. Kime,* 1 Ld. Raym., 203; *Doe v. Burnsall,* 6 T. R., 30; *Doe v. Fonnerereau,* 2 Doul., 505, note; *Cooper v. Hepburn,* 15 Grat. (56 Va.), 558, 559; Fearne's Rem., 373)."

It has been suggested that the question who are to take as remaindermen cannot be determined until the death of Alma E. Burkhalter, that the remainder, to one class or the other, cannot vest until that time; in other words, that notwithstanding the conveyance by Alma E. Burkhalter of her life estate, to John B. Burkhalter, and notwithstanding the express provisions of the will, that life estate continues in John B. Burkhalter as a life estate *pur autre vie* (the life of Alma E. Burkhalter), under the will, until her death, at which time the remainder, to one class or the other, takes effect, and not until that time.

I do not at all endorse this suggestion; it seems impossible to reach this conclusion under the specific directions of the will.

In the fourth paragraph of the original will, dated Janu-

ary 18, 1907, it is provided: "It is further my will and the above devises for life to my three children in this item are made to them upon the express condition that they shall not in any way nor manner encumber said lands by mortgages or otherwise, and should either attempt to sell same, or suffer same sold by any legal process, then it is my will and I hereby cancel said life estate and will and devise said life estate absolutely and forever to the remaindermen as provided and designated in the first part of this item."

It might possibly be argued from the clause, "I hereby cancel said life estate and will and devise said life estate absolutely and forever, to the remaindermen as provided in the first part of this item," that only a life estate was intended to pass to the remaindermen. It seems clear that what the testator meant by "said life estate" was the property covered by the life estate; any other construction would be inconsistent with the limitation "absolutely and forever"; besides, if it should be adopted, the remainder would be limited to the lifetime of the life tenant, and the fee would be intestate property.

The doubt, however, is cleared up, and doubtless the ambiguity was the occasion for the codicil, by the fifth item of the codicil, which is as follows: "If any one of my children shall voluntarily attempt to sell or encumber by mortgage his or her interest in said lands, or if any one of my children shall apply, or permit application to be made to any Court for an order to sell his or her interest in said lands, then the life estate of such child shall *eo instanti* end and determine, and the estate provided in this will for the remaindermen shall immediately vest in such remaindermen."

How it is possible for the life estate of Alma E. Burkhalter to continue as long as she lives, in the face of the provision that her conveyance of it should work an immediate cesser, that it thereupon "shall *eo instanti* end and determine," it is difficult to apprehend. In addition to this, the item further provides, "and the estate provided in this will

for the remaindermen shall immediately vest in such remaindermen."

I cannot imagine language that would more plainly express the testator's intention, that immediately upon her conveyance, the life estate of Alma E. Burkhalter would terminate and that the remainder in fee would pass to such as were entitled thereto under the will. As John B. Burkhalter was, of course, alive at the time of the conveyance, the remainder in fee would vest in him, and the remainder in succession would melt into thin air.

If the conveyance by Mrs. Burkhalter of her life estate did not extinguish it, and it continued until her death, naturally the same result would have ensued if her estate had been a fee simple and was avoided, passing to some one else, upon her breach of the condition against a sale. I do not apprehend that under the many decided cases there could arise a doubt but that her fee simple would have disappeared.

There can be no doubt but that if John B. Burkhalter should survive his mother, the fee will vest in him upon the termination of her life estate; I think that it is equally clear that the course adopted by him and his mother was intended to insure this succession, regardless of the condition of survival, a course not intended by the testator; I think too that they acted upon legal advice in consummating the arrangement, but if it was justified by the law of a situation created by the terms of the will, the motive is not one to be enquired into; the Courts, especially those of the United States, have consistently held that the motive behind a lawful act is not the subject of inquiry, and in this case not the ground of criticism of their legal adviser, known to this Court to have been a most capable and honorable counsellor. At any rate such has not been made the ground of attack in this case.

As pronounced an instance of a transaction militating directly against the intention of the testator is presented in the case of *McElwee v. Wheeler*, 10 S. C., 392. The terms of the will devising a life estate were practically the same as

the terms of the present will. The life tenant joined her husband in executing a deed of feoffment with livery of seizin to another conveying the premises in fee and renounced her inheritance under the Act of 1795. The Court held, as here, that the estate in remainder was a contingent remainder with a double aspect, and that since the deed of feoffment with livery of seizin destroyed the life estate, the interests of contingent remainders of both classes were destroyed. The Circuit decree of Judge Kershaw, affirmed in an opinion by Judge McIver, declared: "Though this may be regarded as a deliberate and tortious defeat of the will of the testator, in obedience to technical rules and distinctions which are binding on the Courts until altered by the Legislature, it must be upheld, however wrongful, or, in the language of Chancellor Kent, however 'flagrantly unjust and repugnant to every settled principle of equity as now understood.' "

Equally pertinent is the case of *Faber v. Police,* 10 S. C., 376. There the limitation was: "A devise to trustees for the use of A 'during his life, and after his death in trust for his lawful issue living at the time of his death; and if he should die leaving no issue' (there being none), then over to his residuary devisees and legatees." The Court held that this limitation created a contingent remainder; that a contingent remainder must be supported by a life estate; and that since the life estate was destroyed by a tortious feoffment, regardless of the motive of the life tenant in making the tortious feoffment, the contingent remainder was thereby destroyed. One of the pivotal questions in this case was whether or not the alleged bad faith of the life tenant in making a tortious feoffment with livery of seizin would bar the contingent remainder. The Court held that the premature destruction of the life estate under the accepted common-law rule, in the absence of a statute changing such rule, destroyed the contingent remainders; the Chief Justice remarking: "I regret that we are compelled to give efficacy to an act of wrong on the part of the life tenant in destroying

the remainders and to that extent defeating the intention of the testator. This effect, originally dependent upon purely technical grounds, has become embodied in the laws of our State, and we have no power to deny its force."

See, also, *McCreary v. Coggeshall,* 74 S. C., 42, 53 S. E., 978, 7 L. R. A. (N. S.), 433, 7 Ann. Cas., 693.

I refer to these cases, not as controlling the present issue, but as indicative of the extent to which the evident intention of a testator must yield to the established rules of law. A notable illustration is in the rule in *Shelley's case.*

In *Jull v. Jacobs,* L. R., 3 Ch. Div., 703, it was held that the authorities "go upon the principle that a gift to A for life, and from and after the decease of A, to B, C and D or anybody else, means from and after the determination of the estate; and whether the estate is determined by revocation or by death, or by the incapacity of the devisee to take, or by any other circumstance, the life-estate being out of the way, the remainder takes effect, having only been postponed in order that the life-estate may be given to A."

In *Lavison v. Lavison,* 18 Beav., 1 (Eng.), the Court said: "I have looked carefully at the authorities, and I am unable to distinguish the case where a person gives an estate to another, and that fails, from the case where the testator himself directs that it shall fail."

See, also, *American Nat. Bank v. Chapin,* 130 Va., 1, 107 S. E., 636, 17 A. L. R., 304.

In that case the appellees contended that the physical death of the life tenant was the time fixed for the vesting of the remainder in the children, but the Court held that the remainders were contingent and that the termination of the life estate by the election of the widow to take her share of the estate in lieu of the life estate accelerated the remainders, and vested the fee-simple title in the children.

To the same effect are: *O'Rear v. Bogie,* 157 Ky., 666, 163 S. W., 1107; *Dean v. Hart,* 62 Ala., 308; *Randall v. Randall,* 85 Md., 430, 37 A., 209; *In re Schulz's Estate,* 113

Mich., 592, 71 N. W., 1079; *Yeaton v. Roberts,* 28 N. H., 459; *Parker v. Ross,* 69 N. H., 213, 45 A., 576; *Wilson v. Stafford,* 60 N. C., 646; *Coover's Appeal,* 74 Pa., 145; *Ferguson's Estate,* 138 Pa., 208, 20 A., 945; *Disston's Estate,* 257 Pa., 537, 101 A., 804, L. R. A., 1918-B, 62; *Meek v. Trotter,* 133 Tenn., 145, 180 S. W., 176.

See, also, *Witherspoon v. Watts,* 18 S. C., 396; *Key v. Weathersbee,* 43 S. C., 414, 21 S. E., 324, 49 Am. St. Rep., 846; *Lesly v. Collier,* 3 Rich. Eq., 128; *Dunlap v. Dunlap,* 4 DeSaus., 314; *Bell v. Towell,* 18 S. C., 94; *Jones v. Bellinger,* 91 S. C., 1, 73 S. E., 1049. The last case cited seems to be on all fours with the case at bar.

I think therefore that the decree appealed from should be reversed, and the case remanded to the Circuit Court with direction to enter a decree in favor of the plaintiff as prayed for in the complaint.