# Richmond

DOROTHY STONE BLACKWELL, ET AL. v. VIRGINIA TRUST COMPANY.

April 21, 1941.

Record No. 2335.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*William Old,* for the appellants.

*Wm. J. McDowell* and *J. Randolph Tucker,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On August 14, 1924, Anna Roberta Stone, a widow, executed a "Deed and Trust Agreement" whereby she conveyed and delivered to the Virginia Trust Company certain real and personal property upon the trust that it pay to her the income therefrom during her life, and at her death divide the property into two equal shares to be held and disposed of as follows:

"(a) It shall pay over the net income arising from one such equal part or share to my son, John L. Stone,

should he survive me, for and during the term of his natural life, and at his death (or at my death, should he not survive me) to pay and deliver over the principal of such part or share, discharged of all trust, to and among his children, in equal shares, the issue of any deceased child of his to take the parent's share by right of representation;

"(b) To pay over the net income arising from the other such equal part *of* share to my son, the said Robert W. Stone, should he survive me, for and during the term of his natural life, and at death (or at my death, should he not survive me) pay and deliver over the principal of such part or share, discharged of all trust, to and among his children, in equal shares; the issue of any deceased child of his to take the parent's share by right of representation; .

"(c) And in the event that either of my said sons should die without leaving issue, then I do direct that the share or part of said trust estate which otherwise would have been paid and delivered over to his issue at his death, as aforesaid, shall, at the death of such son, be paid and delivered over, discharged of all trust, to his brother, should his brother survive him; and if not, then such share or part shall be paid and delivered over, discharged of all trust, to the children of such brother, in equal shares; the issue of any deceased child of his to take the parent's share by right of representation;

"(d) And I, the said Anna R. Stone, do particularly charge and direct, and the right of my said sons respectively to have and receive the income provided for them in the foregoing trusts is conditioned as follows: That neither of my said sons shall assign, anticipate or alienate the said income to which they are respectively entitled, under the preceding trusts, or any part thereof; and that the same shall not be subject to attachment, seizure or sequestration by their creditors, by any legal process or procedure whatsoever; and that if, at any time, either of my said sons shall attempt to assign, an-

ticipate or alienate said income, or any part thereof, or shall become a bankrupt, or an attempt shall be made by any creditor of either of my said sons to attach, seize or *sequetrate* said income, then the right of such son to receive such income shall thereupon absolutely cease for the remainder of his life, and the said Trustee shall thereupon apply the same for the support, maintenance and benefit of such son, in any manner it may deem best, and the expenditures of the Trustee for such purposes shall not be subject to dispute or question by such son, or any person whatsoever.''

The Virginia Trust Company executed the instrument, accepted the trust, and covenanted to execute it with all due fidelity.

In 1928 Mrs. Stone died leaving surviving her two sons, John L. Stone and Robert W. Stone, referred to in the clauses just quoted. At that time each of the sons had living several children.

Upon the death of his mother, Robert W. Stone accepted the trust and received his share of the income arising therefrom until January 6, 1940. On that date he executed and sealed an instrument in which he forever renounced and disclaimed all of his life right, title, interest and estate in and to the trust, reciting the ''intention to terminate my life right, title, interest and estate in and to the said trust and to eliminate any particular estate of whatsoever nature which I may have in the said trust as effectively as would my death terminate and eliminate the same.''

In May, 1940, Dorothy Stone Blackwell, Margaret Stone Wilkinson and Robert Joseph Stone, the three adult children of Robert W. Stone, filed in the court below a bill in equity against the Virginia Trust Company, Robert W. Stone, John L. Stone, the four adult children of John L. Stone, and Mary Frances Stone, the infant daughter of Robert W. Stone and a sister of the three complainants. The bill alleged that by reason of the renunciation and disclaimer executed by Robert W.

Stone, his interest in the trust estate had been terminated and eliminated to the same extent and with the same effect as if he had died, and that such renunciation and disclaimer had accelerated the estate in remainder to his children, who were, therefore, entitled to have the Virginia Trust Company pay over to them and their infant sister, Mary Frances Stone, the principal or corpus of one-half of the estate embraced in the trust agreement and held for the benefit of Robert W. Stone. It was further alleged that a copy of the renunciation had been delivered to the Virginia Trust Company and demand made upon it to turn over to the complainants the corpus of the estate, and that said demand had been refused. The prayer was that the Virginia Trust Company be directed to divide the trust into two equal parts and to deliver to the children of Robert W. Stone their interest.

The Virginia Trust Company demurred to the bill on the grounds that Robert W. Stone had no estate in the trust which could be renounced, that the trust created for his benefit was indestructible during his life, and that in no event could the interests of the remaindermen be accelerated since the instrument manifested the intention of the creator that the trust be continued without such acceleration.

In a written opinion the trial court held that the estate of the remaindermen was not accelerated by the renunciation for two reasons:

First, "because to do so would frustrate the intention of the creator of the trust by dissolving a spendthrift trust set up by her for her son to be enjoyed by him during his entire life-time;" and

Second, "because the remainder is contingent, and only at the death of Robert W. Stone will the court be able to ascertain what person or persons fit the description of the remaindermen. Only at the death of Robert W. Stone can it be determined whether he dies without

leaving any issue or whether he leaves more children than the four now *in esse.*"

From a decree carrying out this ruling and sustaining the demurrer to the bill the complainants below have appealed.

The contention of the appellants is that under the trust agreement the children of Robert W. Stone took a vested and not a contingent remainder; that the "gifts over to the issue of the children or to the brother of Robert W. Stone, or the brother's children or their issue are merely secondary, alternative or substitutionary in character and can have no effect to prevent the acceleration of the remainder;" that the execution of the renunciation instrument by Robert W. Stone terminated and eliminated his life right, title, interest or estate in the trust as effectively as the same would have been terminated or eliminated by his death; and that by virtue of such renunciation the enjoyment of the remainder vested in Robert W. Stone's children was accelerated and they are now entitled to have the trust terminated and the corpus paid and delivered to them.

Much is said in the briefs as to whether the remainder after the life estate of Robert W. Stone is vested or contingent. In our opinion the case does not turn on the character of the remainder. Acceleration has been sustained in both types. *American Nat. Bank* v. *Chapin,* 130 Va. 1, 13-18, 107 S. E. 636, 17 A. L. R. 304; *Christian* v. *Wilson's Ex'rs,* 153 Va. 614, 629-630, 151 S. E. 300.

"Acceleration is the hastening of the enjoyment of an estate which was otherwise postponed to a later period, and the doctrine is only applied in furtherance, or in execution, of the presumed intention of the testator. It is never applied to defeat the testator's intention." *Compton* v. *Rixey's Ex'rs,* 124 Va. 548, 552, 98 S. E. 651, 5 A. L. R. 465. See also, *Christian* v. *Wilson's Ex'rs, supra* (153 Va., at pages 631, 632).

" ' * * * And when it is the evident intention of the testator that the remainder should not take effect till the

expiration of the life of the prior donee, the remainder will not be accelerated.' '' *Compton* v. *Rixey's Ex'rs, supra* (124 Va., at page 559). See also, *Christian* v. *Wilson's Ex'rs, supra* (153 Va., at page 632).

The principle of acceleration is usually applied when a testator leaves property to his wife for life with a remainder over upon her death, and she renounces the will in the manner prescribed by law. Here the testator is charged with knowledge of his wife's legal right to renounce the will and to take under the intestacy laws. In this situation, unless there be an expressed intent that the estate is to be kept together until the death of the wife, the presumed intent is that her election to take under the intestacy laws rather than under the will "is in legal contemplation equivalent to her death," and the remainder will be accelerated upon renunciation. *American Nat. Bank* v. *Chapin, supra* (130 Va., pp. 11, 12); *Christian* v. *Wilson's Ex'rs, supra* (153 Va., p. 629). But here we are dealing with an entirely different situation. A mother has created a trust for the benefit of her son. There is no statute or rule of law which gives him the right to elect between taking under the instrument and apart from it. Neither is there any provision to this effect in the deed. He must take under the trust as written, or not at all. Therefore, there is no presumption that a renunciation by him of the benefits of the trust is equivalent to a removal of his life estate so as to accelerate the remainder.

Indeed, it clearly appears from a reading of the instrument as a whole that it was the intent of the donor that the trust estate be kept intact for the son during the period of his life.

Under the instrument the son is to receive the net income from certain property during his life. It is expressly provided that he shall not "assign, anticipate or alienate said income, or any part thereof", and that it shall not be subject to seizure or attachment by his creditors. Manifestly this is a trust to protect the beneficiary

against his own improvidence and indiscretion. Such a spendthrift trust within specified pecuniary limits is now permitted under ·Code, §5157. *Sheridan* v. *Krause,* 161 Va. 873, 172 S. E. 508, 91 A. L. R. 1067.

The appellants argue that, ''No one can compel a person who is *sui juris* to accept property benefits or to use any specific property.'' That is true. But to decline to accept the benefit of a trust is one thing and to terminate the trust is another. The right to accept or to decline the trust may be a matter solely for the beneficiary, but the right to terminate the trust is a matter for the creator as well. Despite the beneficiary's refusal to accept its benefits, the creator may desire that the trust continue. He may intend that the beneficiary be given an opportunity to change his mind,—to decline the benefits today and to accept them tomorrow.

If the appellants are right in their contention that the instrument of renunciation is sufficient to eliminate the life estate of Robert W. Stone, terminate the trust and accelerate the remainder so as to entitle his children to receive the corpus of the estate, what is to prevent the adult remaindermen from donating their share of the corpus of the estate to the life tenant and thus make it subject to alienation and assignment by him and subject to his debts, in plain violation of the donor's intention?

To prevent just this result the principle is well established, that where by the terms of a spendthrift trust the interest of the beneficiary is inalienable he can not, after having accepted the trust, terminate it by releasing his interest therein. Scott on Trusts, Vol. 3, §337.7, p. 1854, §337.2, p. 1841; Restatement of the Law of Trusts, Vol. II, §337, p. 1030.

There are other provisions in the instrument which likewise manifest the intent that this son's share of the estate is to be kept intact until his death.

Under paragraph (b), Robert W. Stone's share in the estate, at his death, is to be distributed ''to and among

his children, in equal shares; the issue of any deceased child of his to take the parent's share by right of representation." Not until his death can it be determined who are "his children" then living, or who will be "the issue of any deceased child" to take the parent's share.

Again, under paragraph (c) it is provided that should the son "die without leaving issue," then "the share or part of said trust estate which otherwise would have been paid and delivered over to his issue at his death" is to be "paid and delivered over" to his brother should the latter be surviving, "and if not," "to the children of such brother, in equal shares; the issue of any deceased child" to take the parent's share by representation. Not until the death of Robert W. Stone can it be determined who are the parties who would take under this paragraph.

We agree with the learned trial court that it was the plain intent of the creator of this trust that the estate set aside for the use of Robert W. Stone should be kept intact for and during his natural life, and that, therefore, there was no acceleration of the remainder by reason of the execution of the renunciation instrument.

The decree is

*Affirmed.*